# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-0355

Angel Vazquez-Flores, Appellant,

v.

James B. Peake, M.D.,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued March 8, 2007                              (Decided   January 30, 2008  )

*Kathy A. Lieberman*, of Washington, D.C., for the appellant.

*Debra L. Bernal*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Carolyn F. Washington*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and KASOLD and HAGEL, *Judges*.

KASOLD, *Judge*, filed the opinion of the Court.  HAGEL, *Judge*, filed an opinion concurring in the result.

KASOLD, *Judge*: Veteran Angel Vazquez-Flores appeals through counsel a February 1, 2005, decision of the Board of Veterans' Appeals (Board) that denied a disability rating greater than 30% for nephrolithiasis (kidney stones), and denied service connection for a neuropsychiatric disorder on a direct basis and as secondary to a service-connected renal disability.  For the reasons set forth below, the Board's decision will be set aside and these matters remanded for readjudication.

## I. BACKGROUND

Mr. Vazquez-Flores served on active duty in the U.S. Army from July 1963 to July 1965 and from January 1966 to January 1969.  Record (R.) at 26.  He was granted service connection for nephrolithiasis, and in April 1976 his disability rating was increased to 30%.  R. at 242, 246. Additional evidentiary development followed, during which Mr. Vazquez-Flores submitted an April

1979 private mental evaluation report from Dr. Raul Correa Grau that reflects a diagnosis of moderately severe depressive reaction and April 1979 hospitalization records that reflect a diagnosis of schizophrenia. R. at 250-52, 274-75. After additional adjudication wherein a VA regional office (RO) denied his claim for service connection for a psychiatric disorder, Mr. Vazquez-Flores submitted a June 1982 private psychiatric evaluation report that opined that he had undifferentiated schizophrenia and that his condition "becomes more prominent when ph[y]sical symptomatology flares up." R. at 280. He appealed the RO decision to the Board, and in September 1984 the Board, inter alia, denied service connection for an acquired psychiatric disorder on the basis that it was not incurred in or aggravated by service. R. at 296-305.

In August 1994, Mr. Vazquez-Flores sought to reopen his previously denied claim. R. at 358. He also claimed that his "service-connected kidney condition ha[d] increased in severity." *Id*. During the development of these claims, Mr. Vazquez-Flores submitted a July 1994 VA medical report that his nephrolithiasis caused depression. R. at 362. He also submitted a September 1995 letter from his private psychiatrist, Dr. Jose Juarbe, who opined that Mr. Vazquez-Flores' "schizophrenic condition started back in 1964," and that he considered the schizophrenia to be service connected. R. at 390. In February 1998, Dr. Juarbe testified before the RO that Mr. Vazquez-Flores had major depression that "without any doubt is related to his physical condition." R. at 455. In August 2000, the RO issued to Mr. Vazquez-Flores a Supplemental Statement of the Case (SSOC) containing the diagnostic code (DC) criteria for nephrolithiasis, hydronephrosis, and renal dysfunction. R. at 505-14. A November 2002 VA mental disorders examination report reflected that Mr. Vazquez-Flores had a diagnosis of recurrent, moderate major depressive disorder that was not related to service and was not precipitated or aggravated by Mr. Vazquez-Flores' service-connected renal disability. The VA examiner stated that Mr. Vazquez-Flores "does not report any subjective complaint, any type of relationship between his renal symptoms and his psychiatric symptomatology," and that his clinical history demonstrated no type of relationship between these conditions. R. at 585.

In the decision on appeal, the Board found that letters dated April 2001 from the RO and December 2003 from the Appeals Management Center (AMC) satisfied the Secretary's 38 U.S.C. § 5103(a) duty to notify, and that a February 2004 SSOC satisfied the additional notice requirement in 38 C.F.R. § 3.159(b) (2007). R. at 18-20. The Board denied service connection for a

2

neuropsychiatric disorder on both a direct basis and as secondary to a service-connected renal disability, and also denied an increased disability rating greater than 30% for nephrolithiasis.

Mr. Vazquez-Flores argues on appeal that the Board erred in its determination that adequate section 5103(a) notice on how to substantiate his claim had been provided. Specifically, he argues that the letters relied upon by the Board failed to explain the criteria for a disability rating greater than 30% for nephrolithiasis, including the possibility of rating the condition under an alternative DC. He further argues that notice that the evidence must show that his condition has "gotten worse" – without explaining what "worse" means in the context of the claim – is also insufficient. Mr. Vazquez-Flores also maintains that he should have been given notice on how to request an extraschedular rating.

## II. DISCUSSION

### A. 38 U.S.C. § 5103(a) Notice

*1. Required Notice in General*

Upon receipt of a complete or substantially complete application for benefits, the Secretary is required to inform a claimant of any information and evidence not of record (1) that is necessary to substantiate the claim, (2) that the Secretary will seek to obtain, if any, and (3) that the claimant is expected to provide, if any. *See* 38 U.S.C. § 5103(a); *Quartuccio v. Principi*, 16 Vet.App. 183, 187 (2002) (failure to provide adequate section 5103(a) notice is remandable error); *see also Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d 1334, 1345-46 (Fed. Cir. 2003) (section 5103(a) "appl[ies] only when a claim cannot be granted in the absence of additional necessary information described in the notice"). Regulations also provide that the Secretary is required to "request that the claimant provide any evidence in the claimant's possession that pertains to the claim." 38 C.F.R. § 3.159(b)(1) (2007); *see Pelegrini v. Principi*, 18 Vet.App. 112, 121 (2004).

The purpose of section 5103(a) and § 3.159(b) is to require the Secretary to "provide affirmative notification to the claimant prior to the initial decision in the case as to the evidence that is needed and who shall be responsible for providing it." *Mayfield v. Nicholson*, 444 F.3d 1328, 1333 (Fed. Cir. 2006) (*Mayfield II*). However, section 5103(a) does not require a "predecisional adjudication" of the evidence because "the duty to notify deals with evidence gathering, not the

3

analysis of already gathered evidence." *Locklear v. Nicholson*, 20 Vet.App. 410, 415-16 (2006). Indeed, section 5103(a) notice "may be generic in the sense that it need not identify evidence specific to the individual claimant's case (though it necessarily must be tailored to the specific nature of the veteran's claim)." *Wilson v. Mansfield*, 506 F.3d 1055, 1062 (Fed. Cir. 2007). Further, although adequate section 5103(a) notice need not be provided in a single notice letter, when multiple documents are used to provide adequate notice, they must relate to notice and "contain the same content or serve the same purpose as [section] 5103(a) notification." *Sanders v. Nicholson*, 487 F.3d 881, 886 (Fed. Cir. 2007); *see also Mayfield II*, 444 F.3d at 1335 ("The Board's decision was based on an incorrect understanding of the law, specifically that [section 5103(a)] and [§ 3.159(b)] permitted compliance through a combination of unrelated pre- and post-decisional communications.").

Generally, section 5103(a) notice must be given on "all five elements of a claim for service connection." *Dingess v. Nicholson*, 19 Vet.App. 473, 487 (2006); *see also D'Amico v. West*, 209 F.3d 1322, 1327 (Fed. Cir. 2000) (noting five elements of claim). Regarding the initial-disability-rating element of a claim for service-connected disability compensation, we held in *Dingess* that general section 5103(a) pre-adjudicatory notice regarding an initial disability rating must be provided, to wit:

> [T]he Secretary must, at a minimum, notify the claimant that, should service connection be awarded, a schedular or extraschedular disability rating will be determined by applying relevant [DCs] in the rating schedule, found in title 38, Code of Federal Regulations, to provide a disability rating from 0% to as much as 100% (depending on the disability involved) based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration, and their impact upon employment. Moreover, consistent with the statutory and regulatory history, that notice must provide examples of the types of medical and lay evidence that the claimant could submit (or ask [the Secretary] to obtain) that are relevant to establishing a disability – e.g., competent lay statements describing symptoms, medical and hospitalization records, medical statements, employer statements, job application rejections, and any other evidence showing exceptional circumstances relating to the disability.

*Dingess*, 19 Vet.App. at 488 (citing 66 Fed. Reg. 45,620, 45,622 (Aug. 29, 2001)). However, when the application for benefits "suggests there is specific information or evidence necessary to resolve an issue relating to elements of a claim," the Secretary "must consider that when providing notice and tailor the notice to inform the claimant of the evidence and information required to substantiate

4

the elements of the claim reasonably raised by the application's wording." *Id*. at 488-89; *see also Kent v. Nicholson*, 20 Vet.App. 1, 9-10 (2006) (holding more specific notice is required for claims to reopen). In short, the nature of the claim defines the scope of the notice required by section 5103(a). *See Wilson* and *Dingess*, both *supra*.

*2. Required Notice for an Increased-Compensation Claim*

In the claimant-friendly VA-benefits system, a claimant's assertion that an already service-connected disability has worsened or increased in severity is a claim for additional (or increased) compensation. *See* 38 U.S.C. §§ 1110 (providing for the award of compensation for service-connected disabilities), 1114 (providing rates for disability compensation). An increased-compensation claim for a given disability is a new and separate claim for which section 5103(a) pre-adjudicatory notice is required. *See* 38 C.F.R. § 3.400 (2007) (recognizing claim for increase as separate from original claim or claim reopened after final disallowance); *see also Smallwood v. Brown*, 10 Vet.App. 93, 97 (1997). Unlike an initial claim for disability compensation where the evaluation of the claim is generally focused on substantiating service connection by evidence of an in-service incident, a current disability, and a nexus between the two, the nature of an increased-compensation claim centers primarily on evaluating the worsening of a disability that is already service connected. *See Francisco v. Brown*, 7 Vet.App. 55, 58 (1994); *Proscelle v. Derwinski*, 2 Vet.App. 629 (1992). That worsening generally is measured by the degree of the disability impairment, which in turn is measured by the symptoms exhibited and the effect that impairment has on the claimant's employment and daily life. *See* 38 U.S.C. § 7104(d)(1); 38 C.F.R. § 4.10 (2007) (basis of disability evaluations is ability to function under ordinary conditions of daily life, including employment); *Moore v. Nicholson*, 21 Vet.App. 211, 218 (2007); *Otero-Castro v. Principi*, 16 Vet.App. 375, 381-82 (2002).

Accordingly, for an increased-compensation claim, section 5103(a) requires, at a minimum, that the Secretary notify the claimant that, to substantiate a claim, the claimant must provide, or ask the Secretary to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on the claimant's employment and daily life. Further, if the DC under which the claimant is rated contains criteria necessary for entitlement to a higher disability rating that would not be satisfied by the claimant demonstrating a noticeable worsening or increase in severity of the disability and the effect of that worsening has on the

claimant's employment and daily life (such as a specific measurement or test result), the Secretary must provide at least general notice of that requirement to the claimant. *See Wilson*, 506 F.3d at 1060-62; *Moore* and *Otero-Castro*, both *supra*; 38 C.F.R. § 4.10. Additionally, the claimant must be notified that, should an increase in disability be found, a disability rating will be determined by applying relevant DCs, which typically provide for a range in severity of a particular disability from 0% to as much as 100% (depending on the disability involved), based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration, and their impact upon employment and daily life. *Dingess*, 19 Vet.App. at 488; 38 C.F.R. § 4.10. As with proper notice for an initial disability rating and consistent with the statutory and regulatory history, the notice must also provide examples of the types of medical and lay evidence that the claimant may submit (or ask the Secretary to obtain) that are relevant to establishing entitlement to increased compensation–e.g., competent lay statements describing symptoms, medical and hospitalization records, medical statements, employer statements, job application rejections, and any other evidence showing an increase in the disability or exceptional circumstances relating to the disability. *See Dingess*, *supra*.

### 3. Administrative Claims Processing

Section 5103(a) notice must be given before an initial decision on the claim is rendered in order to serve its statutory purpose of promoting development of the claim properly the first time. *See Mayfield II*, 444 F.3d at 1333 ("The purpose of the statute and the corresponding regulation is to require that the VA provide affirmative notification to the claimant prior to the initial decision in the case as to the evidence that is needed and who shall be responsible for providing it."); 146 Cong. Rec. S9212-13 (Sept. 25, 2000) (statement of Sen. Rockefeller) (notice is intended to ensure that claim is "developed properly the first time the veteran submits an application for benefits" such that it will "lead to expedited decisionmaking and higher satisfaction in the process"). This purpose is wholly frustrated when inadequate notice leads to inadequate development of a claim prior to the initial decision.

To ensure that claimants receive the benefits to which they are entitled, Congress created a uniquely pro-claimant, nonadversarial VA-benefits adjudicatory system that contains several important procedural steps to promote that pro-claimant environment. *See Wilson*, 506 F.3d at 1060-62 (discussing statutory and regulatory provisions relating to the adjudicatory scheme);

6

*Sanders*, 487 F.3d at 889 (noting the "uniquely pro-claimant benefits system" at VA); *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998); *Hayre v. West*, 188 F.3d 1327, 1334 (Fed. Cir. 1999) (veterans system is "uniquely claimant friendly system of awarding compensation"). Those procedural steps allow claimants who disagree with initial decisions on their claims to receive a Statement of the Case (SOC) (and an SSOC if necessary), explaining the reasons, law, and regulations governing that decision. Additionally claimants may receive further development of their claim if deemed proper by the Secretary, they may appear at a hearing, request a review by a decision review officer (DRO), and receive at least one review of the initial decision by the Board. *See Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1346-47 (Fed. Cir. 2003) (invalidating regulation that precluded claimant's right to two reviews before the Agency); *Dingess*, 19 Vet.App. at 489-91 (discussing section 5103(a) within statutory adjudicatory scheme); *see, e.g.*, 38 U.S.C. §§ 5104(a)-(b) (requiring notice of initial decision on claim, to include explanation of procedure for obtaining review of decision and, when benefit sought is denied, statement of reasons for decision and summary of evidence considered by Secretary), 7104(a) (vesting Board with jurisdiction over appeals from decision by Secretary on claim), 7105(d) (providing that after initial decision is rendered on claim, claimant may file Notice of Disagreement (NOD) and Secretary must attempt to resolve disagreement or issue SOC); *see also* 38 C.F.R. §§ 3.103(b)(1), (c) (requiring notice of any decision affecting payment of benefits or granting relief, to include notice of decision made, right to hearing, and notice of procedures necessary to initiate appeal), 3.103(c)(2) (providing that VA hearing officer has duty to "suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position"), 3.2600 (providing for review by DRO after NOD has been filed); 19.31(a) (2007) (providing for an SSOC to be issued to inform claimant of material changes since the SOC or prior SSOC).

When an NOD is filed to the initial decision and there is alleged a notice error, the surest and often quickest way to correct that error is for the adjudicator to issue a new, adequate notice and readjudicate the claim. *See Medrano v. Nicholson*, 21 Vet.App. 165, 169 (2007) (Secretary "may cure timing defects by issuing a fully compliant [section 5103(a)] notification and then readjudicating the claim"); *see also Mayfield II*, 444 F.3d at 1333-34 (timing-of-notice defect may be cured by issuance of content-compliant section 5103(a) notice and subsequent readjudication). For those claims that are not resolved by the adjudicator and an appeal ultimately reaches the Board

7

for final decision, the Board must necessarily consider any established predecisional notice error to be presumptively prejudicial. *Cf. Sanders*, 487 F.3d at 886, 891 (noting that the claimant has the burden of demonstrating notice error); *Simmons v. Nicholson*, 487 F.3d 892, 894-96 (Fed. Cir. 2007) (claimant must establish that VA committed predecisional notice error before Court takes account of prejudice). The Board may evaluate for harmless error, however, such evaluation is subject to the Court's de novo review. *See Medrano*, 21 Vet.App. at 170-71 (citing *Mayfield v. Nicholson*, 20 Vet.App. 537, 542-43 (2006) (*Mayfield III*)).

### 4. Rule of Prejudicial Error

In filings with the Court, an appellant generally must demonstrate error. *See Sanders*, 487 F.3d at 891 (appellant has burden of demonstrating section 5103(a) notice error); *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (appellant has burden of demonstrating error); *compare* U.S. VET. APP. R. 28(a) (requiring appellant to provide the Court with a brief presenting all issues on appeal) *with* U.S. VET. APP. R. 28(I) (suspending Rule 28(a) and allowing a pro se veteran to submit an informal brief). Whether adequate section 5103(a) notice has been provided is reviewed under the "clearly erroneous" standard of review. *See Garrison v. Nicholson*, 494 F.3d 1366, 1370 (Fed. Cir. 2007); *Gordon v. Nicholson*, 21 Vet.App. 270, 281 (2007) (section 5103(a) notice error is a factual determination reviewed under the "clearly erroneous" standard); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (Board's findings of fact are reviewed under the "clearly erroneous" standard of review in 38 U.S.C. § 7261(a)(4)). A finding of material fact is clearly erroneous when the Court, after reviewing the entire evidence, "'is left with the definite and firm conviction that a mistake has been committed.'" *Id*. (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

When it is established on appeal to the Court that the Board has committed an error, the Court must take due account of the rule of prejudicial error. *See* 38 U.S.C. § 7261(b)(2) (Court shall "take due account of the rule of prejudicial error"); *Newhouse v. Nicholson*, 497 F.3d 1298, 1301 (Fed. Cir. 2007) (stating "that the Veterans Court was required to examine whether any errors by VA were prejudicial and that it must do so based on the administrative record"); *Conway v. Principi*, 353 F.3d 1369, 1374-75 (Fed. Cir. 2004). Although an appellant generally must establish that error is prejudicial, *see Marciniac v. Brown*, 10 Vet.App. 198, 201 (1997) (citing *Parker v. Brown*, 9 Vet.App. 476, 481 (1996) (appellant must demonstrate prejudice, or Court will conclude that a

technical procedural defect is harmless)), once an appellant establishes that there was a section 5103(a) notice error, such error is presumptively prejudicial, *see Sanders*, 487 F.3d at 886, 891. A presumptively prejudicial notice error will require reversal of the Board's finding of adequate section 5103(a) notice unless the Secretary "can show that the error did not affect the essential fairness of the adjudication." *Id.* at 889; *see also Mlechick v. Mansfield*, 503 F.3d 1340, 1345 (Fed. Cir. 2007) (same); *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 396 (Fed. Cir. 1996) (procedural or substantive error is prejudicial when error results in "injury to an interest that the statute, regulation, or rule in question was designed to protect").

To overcome the presumption of prejudice associated with a pre-adjudicatory notice error, the Secretary "must persuade the reviewing court that the purpose of the notice was not frustrated." *Sanders*, 487 F.3d at 889; *see also Mlechick*, 503 F.3d at 1346 (holding that our Court reviews predecisional notice errors to determine whether any differences between notice given and section 5103(a) notice required "affect[ed] the fundamental fairness of the adjudication"). This may be done by demonstrating, for example, (1) that the claimant had actual knowledge of what was necessary to substantiate the claim and that the claim otherwise was properly developed, (2) that "a reasonable person could be expected to understand from the notice what was needed" to substantiate the claim,[1] or (3) that the benefit could not be awarded as a matter of law. *Sanders*, 487 F.3d at 889 (reiterating examples noted in *Mayfield v. Nicholson*, 19 Vet.App. 103 (2005) (*Mayfield I*).

Additionally, because the Court reviews only final Board decisions and not the initial or intermittent decisions rendered below, *see* 38 U.S.C. § 7252, and because reversal is not warranted unless an error affects the essential fairness of the adjudication, *see Sanders*, 487 F.3d at 886, the Court should consider whether the post-adjudicatory notice and opportunity to develop the case that is provided during the extensive administrative appellate proceedings leading to the final Board decision and final Agency adjudication of the claim, *see, e.g.*, 38 U.S.C. §§ 5104(a)-(b), 7104(a), 7105(d); 38 C.F.R. §§ 3.103(b)(1), (c), (c)(2), 3.2600, 19.31(a) (2007), served to render any pre-

---

[1] Although demonstrating that a reasonable person would be expected to understand from a particular notice what was necessary to substantiate the claim is cited in *Sanders* as a means of demonstrating no prejudice, it is more correctly stated to be a demonstration that there was no error. *See Fenstermacher v. Phila. Nat'l Bank*, 493 F.2d 333, 337 (3d Cir. 1974) ("[N]o error can be predicated on insufficiency of notice since its purpose had been served."). Of course, that also means there was no prejudice arising from the notice. *See Kitt v. Clark*, 931 F.2d 1246, 1249 (8th Cir. 1991) ("[I]f there is no error, there can be no prejudice.").

adjudicatory section 5103(a) notice error non-prejudicial. *See Sanders*, 487 F.3d at 886 (recognizing that the purpose of the rule of prejudicial error is "'to avoid wasteful proceedings on remand where there is no reason to believe a different result would have been obtained had the error not occurred'" (quoting *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004))); *see also Newhouse*, 497 F.3d at 1301 (stating "that the Veterans Court was required to examine whether any errors by VA were prejudicial and that it must do so based on the administrative record").[2]

### 5. *Application in this Case*

The record before the Board reveals that Mr. Vazquez-Flores was assigned a 30% disability rating for nephrolithiasis under 38 C.F.R. § 4.115b, DC 7508 (2007), the highest disability rating for that disability under that DC. However, DC 7508 cross-references 38 C.F.R. § 4.115b, DC 7509, "hydronephrosis," which provides that severe hydronephrosis may be rated as renal dysfunction under 38 C.F.R. § 4.115a. Under § 4.115a, hypertension that is found to be 40% disabling under 38 C.F.R. § 4.104, DC 7101 (2007), is sufficient to increase a disability rating for nephrolithiasis to 60%. *See* 38 C.F.R. §§ 4.115a, 4.115b. Adequate section 5103(a) notice for Mr. Vazquez-Flores' increased-compensation claim should have included, at a minimum, notification that he must either provide, or ask the Secretary to obtain, medical or lay evidence demonstrating the worsening of the disability and the effect of that worsening on his employment and daily life. Additionally, because

---

[2] Although our dissenting colleague takes exception to our noting that pre-adjudicatory notice may be rendered non-prejudicial by the administrative appellate process, we see nothing in *Sanders* that might limit the Court solely to the "examples" cited therein when assessing prejudice. Indeed, the very designation of the three stated means of demonstrating no prejudice as "examples" indicates there may be other means of doing so. Moreover, we note that our error in *Mayfield I* was in determining that pre-adjudicatory notice had been satisfied by a document not otherwise discussed by the Board. The Federal Circuit in *Sanders*, *Newhouse*, and *Mlechick* made it clear that our focus should be on whether the final Board decision under review is rendered essentially unfair as a result of the initial notice error, i.e., whether the notice error prejudicially affected the Board's final decision. *See also Dunlap v. Nicholson*, 21 Vet.App. 112, 118 (2007) ("[I]n order for the Court to be persuaded that no prejudice resulted from a notice error, the record must demonstrate that, despite the error, the adjudication was nevertheless essentially fair."). Finally, the purpose of pre-adjudicatory notice is to ensure the initial decision is correct. *See Mayfield II*, 444 F.3d at 1333 ("The purpose of the statute and the corresponding regulation is to require that the VA provide affirmative notification to the claimant *prior to the initial decision* in the case as to the evidence that is needed and who shall be responsible for providing it." (emphasis added)). As noted in section II.A.(4) of the text, we review final Board decisions that are rendered after an extensive administrative appellate process. Nothing in law or common sense supports a conclusion that the Court should put on blinders and ignore this process or a conclusion that a notice error prior to the initial decision by the Secretary could not be rendered non-prejudicial when the full panoply of administrative appellate procedures established by Congress are provided to the claimant. It is well settled that a remand is not warranted when no benefit would flow to the claimant. *See Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (remand unnecessary when it "would result in this Court's unnecessarily imposing additional burdens on the [Board and the Secretary] with no benefit flowing to the veteran. This we cannot do.").

at least some of the higher disability ratings authorized under the DC (and referenced DCs) under which Mr. Vazquez-Flores' disability is rated are based on specific criteria beyond the obvious effect of the worsening of the disability and its effect upon his employment and daily life, the Secretary should have notified Mr. Vazquez-Flores, at least in general terms, of the information and evidence necessary to establish these more specific criteria. Further, if an increase in disability is found, a disability rating would be assigned by applying relevant DCs based on the nature, severity, and duration of the symptoms and their impact upon his employment and daily life to the extent permitted by law.

In this case, the Board relied on notice letters dated April 2001 and December 2003 and a February 2004 SSOC to find adequate notice. We observe that the Board relied on the February 2004 SSOC only to find compliance with § 3.159. The Board found that the April 2001 and December 2003 notice letters provided the notice required by section 5103(a). *See Prickett v. Nicholson*, 20 Vet.App. 370, 375-76 (2006) (concluding that Board found one letter alone satisfied Secretary's section 5103(a) duty despite discussion of other documents within the decision). The Board considered the April 2001 letter to be a routine notice letter issued by the RO. Although the Board noted that the December 2003 letter from the AMC was not a "formal" section 5103(a) notice letter, it nevertheless found that this letter informed Mr. Vazquez-Flores of the status of both of his claims and provided him basic notice required under section 5103(a). R. at 19; *see* R. at 928. Because the December 2003 letter was not a decisional notification and contained elements of notice required by section 5103(a), it was not improper for the Board to rely on it when determining whether adequate section 5103(a) notice had been provided to Mr. Vazquez-Flores. *See Mayfield II*, 444 F.3d at 1333 (post-decisional documents have contents and purposes different from those of compliant section 5103(a) notice documents and therefore cannot serve to satisfy the purpose of section 5103(a)); *cf. Sanders*, 487 F.3d at 886.

Nonetheless, neither of these letters provided to Mr. Vazquez-Flores the necessary information regarding substantiating his claim for a disability rating higher than the 30% rating currently assigned. The April 2001 letter does not advise how to substantiate an increased-compensation claim. Rather, it focuses only on what is necessary to substantiate a service-connection claim. R. at 550-53. The December 2003 letter advised him only to submit evidence that shows that his nephrolithiasis has "gotten worse." R. at 928. It fails to explain that

11

the evidence must demonstrate the effect of that worsening on his occupational and daily life or to provide, at least in general terms, the criteria beyond the effect of the worsening of the disability upon the occupational and daily life that is necessary to be awarded the higher disability rating for his condition. *See* 38 C.F.R. §§ 4.115a, 4.115b; *Wilson*, *Moore*, and *Otero-Castro*, all *supra*. Moreover, the totality of information provided in these documents was also confusing in that it provided differing versions of what was required to show entitlement to a higher disability rating. *See Kent*, 20 Vet.App. at 12 (incomplete and confusing information renders section 5103(a) notice inadequate). Accordingly, the lack of adequate information in the notice and the otherwise confusing nature of the notice leaves us with a definite and firm conviction that the Board's finding that the Secretary provided section 5103(a)-compliant notice is clearly erroneous. *See Gordon*, *supra*.

Having found notice error, that error is presumptively prejudicial. *See Sanders*, 487 F.3d at 891. The Secretary argues that Mr. Vazquez-Flores was not prejudiced because the "record clearly shows that [he] had actual knowledge of what was necessary to substantiate his claim. Indeed, [Mr. Vazquez-Flores] was clearly advised of the evidence necessary to substantiate his claim." Secretary's Brief at 23. We are not convinced by the Secretary's argument. To the extent he argues that the April 2001 and December 2003 letters clearly identified the information and evidence that would assist in substantiating Mr. Vazquez-Flores' claim, his argument fails. As discussed above, these documents were incomplete and confusing concerning what was necessary for Mr. Vazquez-Flores to substantiate his claim for increased compensation.

Additionally, the Secretary's assertion that Mr. Vazquez-Flores had actual knowledge of what was necessary to substantiate his claim appears to be premised on a misunderstanding that receipt of notice equates to actual knowledge. It does not. Actual knowledge is established by statements or actions by the claimant or the claimant's representative that demonstrate an awareness of what was necessary to substantiate his or her claim. *See Dalton v. Nicholson*, 21 Vet.App. 23, 30-31 (2007); *see also Short Bear v. Nicholson*, 19 Vet.App. 341, 344 (2005). To the extent the Secretary contends that by submitting evidence Mr. Vazquez-Flores demonstrated actual knowledge of what was needed to substantiate his claim, the Secretary proffers no evidence from the record on appeal that demonstrates such actual knowledge or understanding on the part of Mr. Vazquez-Flores. *See Sanders*, *Dalton*, and *Short Bear*, all *supra*. Finally, the record on appeal otherwise does not

12

demonstrate that during the administrative appeal process Mr. Vazquez-Flores was provided the information necessary such that any defective predecisional notice error was rendered non-prejudicial in terms of the essential fairness of the adjudication.[3][4]  *See Mlechick*, *Newhouse*, and *Sanders*, all *supra*.

B. Statement of Reasons or Bases

The Board must include in its decision a written statement of the reasons or bases for its findings and conclusions, adequate to enable an appellant to understand the precise basis for the Board's decision as well as to facilitate review in this Court.  *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert*, 1 Vet.App. at 56-57.  To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant.  *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gilbert*, 1 Vet.App. at 57.

Mr. Vazquez-Flores argues that the Board, in denying his neuropsychiatric disorder claim, relied heavily on a November 2002 VA examination report despite the fact that the report is unclear as to the scope of a key statement, and without explaining evidence in the record that refutes that key statement.  Specifically, the report states that Mr. Vazquez-Flores "does not report any subjective complaint, any type of relationship between his renal symptoms and his psychiatric

---

[3] Unlike our dissenting colleague, we believe our duty to "take due account of the rule of prejudicial error" is not limited to considering only the three "examples" cited in *Sanders*. *See* n.2, *supra*, and accompanying text. Moreover, having noted that notice error before the initial decision might be rendered non-prejudicial by the full panoply of administrative appellate procedures below, we proceed to find that the administrative appellate proceedings below fail to so demonstrate.  Having confronted an issue germane to resolution of this case, our ruling is not dicta. *See, e.g.*, *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003) ("As we have noted before, 'where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.'" (quoting *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc))); *Hatch v. Principi*, 18 Vet.App. 527, 531 (2004) ("Although '[n]o controlling precedent can arise from dictum on a question not before the court,' '[w]hen an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996), and *Sullivan v. Dep't of Navy*, 720 F.2d 1266, 1279 (Fed. Cir. 1983))).

[4] In light of our conclusion that the presumption of prejudice was not rebutted with regard to specific notice of how an increased rating might be substantiated, we need not further address other alleged errors in the notice and any resultant prejudice. *See Dunn v. West*, 11 Vet.App. 462, 467 (1998) (remand of appellant's claim under one theory moots the remaining theories advanced on appeal).

13

symptomatology," and that his clinical history shows no type of relationship between these conditions. R. at 585. This statement in the November 2002 VA examination report may be read broadly to say that there is no medical evidence and no complaints of record from Mr. Vazquez-Flores regarding a relationship between his nephrolithiasis and his psychological condition. However, the record contains at least three reports that, on their face, contradict this statement. *See* R. at 280 (June 1982 psychiatric evaluation report stating that Mr. Vazquez-Flores' psychiatric condition "becomes more prominent when ph[y]sical symptomatology flares up"), 362 (July 1994 VA medical record reflecting that Mr. Vazquez-Flores' complaints of depression were the result of his nephrolithiasis), 455 (February 1998 testimony of Dr. Juarbe that Mr. Vazquez-Flores' major depression "without any doubt is related to his physical condition"). The Board erred in not explaining the discrepancy in this apparently contradictory information or why it gave greater weight to the November 2002 examination report than it gave to the contradictory information. *See Gilbert*, *supra.*

It is also possible that the November 2002 examination report can be read more narrowly to mean that, during that particular examination, Mr. Vazquez-Flores provided no history or complaint to the examiner. The Board should have recognized and addressed the fact that the November 2002 examination report statement on this key issue could fairly be read broadly or narrowly, with differing meanings, and it should have either returned the examination report to the examiner for clarification of its meaning or explained why such action was not necessary. *See Daves v. Nicholson*, 21 Vet.App. 46, 51 (2007) (when medical examination report was susceptible to multiple fair but inconsistent meanings, Board erred in failing to seek clarification); 38 C.F.R. § 4.2 (2007).

C. Foreign Language Documents Contained in the Record on Appeal

The record on appeal contains numerous documents obtained from the Social Security Administration that are in a language other than English but are unaccompanied by an English translation, thus impeding judicial review. *See*, *e.g.*, R. at 863-64, 866. The "Court conducts its reviews and deliberations in English. Any document transmitted to the Court (including one in the record on appeal) in a language other than English must be accompanied by an English translation that is certified by the translator, pursuant to 28 U.S.C. § 1746, as true and accurate." U.S. VET. APP. R. 3(h). The parties are reminded that compliance with the Court's Rules of Practice and Procedure is mandatory, not permissive.

### D. Remand

Where, as here, the Board has failed to provide an adequate statement of reasons or bases and there have been other errors prejudicial to an appellant, the general remedy is to remand the affected matters for corrective action. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) ("[W]here the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy."). On remand, Mr. Vazquez-Flores may present any additional evidence and argument in support of the matters remanded, and the Board must consider any evidence and argument so presented. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). These matters must be provided expeditious treatment on remand. *See* 38 U.S.C. §§ 5109B, 7112.

## III. CONCLUSION

Upon consideration of the foregoing, the Board's February 1, 2005, decision is SET ASIDE, and the matters are REMANDED for readjudication consistent with this opinion.

HAGEL, *Judge*, concurring in the result: I concur only in the majority's ultimate conclusion that a claim for increased disability compensation requires at least general section 5103(a) notice tailored to the particulars of an individual's claim. This is a logical conclusion flowing from our previous decisions, as is the majority's ultimate determination that the notice provided to Mr. Vazquez-Flores was deficient and that the Secretary failed to rebut the presumption of prejudice as required by the Federal Circuit in its opinion in *Sanders*. However, I write separately to express my disagreement with the majority's establishment, in dicta, of a fourth means of rebutting the presumption of prejudice when a section 5103(a) notice error is shown by the appellant. I also write to articulate my opposition to the majority's unnecessary and misleading statements regarding the analysis of prejudice and the misguided application of the U.S. Court of Appeals for the Federal Circuit's (Federal Circuit's) recent opinions in *Sanders*, *Newhouse, Mlechick*, and *Wilson*, all *supra*, that, if applied, would frustrate the purpose of pre-decisional section 5103(a) notice obligations in the VA adjudicatory scheme. The majority's statements are neither necessary to reach the decision in this case nor applied in reaching it. They are, then, purely dicta. There is danger in permitting such language to survive in a precedential opinion, as its existence invites selective quotation and

misapplication of that language in future cases, similar to what the majority has done with the Federal Circuit opinions claimed to support its mistaken view. The majority's attempt to enumerate a fourth "example" for rebutting prejudice circumvents the Federal Circuit's holdings in both *Mayfield* and *Sanders*.

### 1. Analysis of Decisions of the Federal Circuit Regarding the Application of the Rule of Prejudicial Error in Cases Involving Allegations of Defective Section 5103(a) Notice

There is no doubt that this Court has the responsibility to take into account the rule of prejudicial error. 38 U.S.C. § 7261(b)(2); *Conway v. Principi*, 353 F.3d 1369 (2004) (holding that this Court may not refuse to take into account the rule of prejudicial error). We are also instructed that, in making such determinations, we are not limited solely to the facts as found by the Board. *Newhouse v. Nicholson*, 497 F.3d 1298 (2007). These two holdings, however, do not, in cases of section 5103(a) notice error, permit the Court to conduct an unlimited and unconstrained foraging of the record to make such determinations. In the context of making a determination regarding prejudicial error in section 5103(a) notice cases, the Federal Circuit has prescribed the Court to follow a particular method of analysis. It has done so for a variety of reasons, not the least of which is to ensure that the purpose for which that statute was created is not frustrated and to ensure that the burden of proof of the harmlessness of defective notice remains on the Secretary, who is charged by Congress with providing adequate notice. *See Sanders*, 487 F.3d at 887 (holding that "the Secretary is required to persuade the [C]ourt that the purpose of the notice was not frustrated").

After this Court wrestled with the application of the rule of prejudicial error in the context of section 5103(a) notice, this question was definitively resolved by the Federal Circuit by its decision in *Sanders*.[1] *See Mayfield v. Nicholson*, 19 Vet.App. 103 (2005); *Mayfield v. Nicholson*, 19 Vet.App. 220, 222 (2005) (denying full-Court consideration; Ivers, J., and Hagel, J., dissenting); *Overton v. Nicholson*, 20 Vet.App. 427 (2006); *Overton*, *supra* n.1 (denying full-Court

---

[1] I have expressed my view that it is best to develop a general test for the application of the rule of prejudicial error that can be applied in all cases, rather than to devise a special test applicable only to section 5103(a) notice cases. *See Overton v. Nicholson*, 20 Vet.App. 494, 498 (2006) (denying full-Court consideration; Hagel, J., Davis, J., and Schoelen, J., dissenting). I believe such a general test could, if so formulated, include a more general use of the administrative record for consideration of the facts of each case to determine whether a notice error is prejudicial. However, the Federal Circuit has found, for the persuasive reasons stated in *Sanders*, that a special test is to be used in deciding cases in which a section 5103(a) notice error is found. We are, of course, required to follow that precedent.

16

consideration; Hagel, J., Davis, J., and Schoelen, J., dissenting); *see also Sanders*, 487 F.3d at 891 (Fed. Cir. 2007) (holding that "all [section 5103(a)] notice errors are presumed prejudicial and that the VA has the burden of rebutting this presumption"). Consequently, despite the majority's characterization to the contrary, *see* n.2 of the majority opinion, this Court's initial decision in *Mayfield* has been discredited. The Federal Circuit's decision in *Mayfield* found error in this Court's reliance on a document not considered by the Board to be error and *Sanders* overruled this Court's *Mayfield* decision with respect to the placement of the burden on the appellant to show prejudice.

In *Sanders*, the Federal Circuit made several key findings. First, the veteran bears the burden of establishing that there is section 5103(a) notice error. Consequently, if the veteran fails in this regard, then there is no need to engage in a prejudicial-error analysis with regard to that issue. *See id.* at 891. In making this finding the Federal Circuit relies on Rule 28(a) of this Court's Rules of Practice and Procedure. That rule, in pertinent part, requires that the appellant submit a brief that includes his or her contentions with respect to the issues and a short conclusion stating the precise relief sought.[2] In short, it appears that, in order to satisfy the requirement of demonstrating error, the represented appellant[3] must allege the error in the brief and support the allegation with proper legal and factual citations.

Second, *Sanders* holds that if the veteran alleges a notice error and properly supports that allegation, that the error is presumed to be prejudicial, while VA has the burden of proving that the notice error did not result in prejudice. *Id.* at 889.

Third, in *Sanders*, the Federal Circuit held that if the Court finds a notice error and the

---

[2] Rule 28(a) of the Court's Rules of Practice and Procedure states in full:

The appellant must file a brief which, unless the appellant is self-represented and submits an informal brief pursuant to subsection (I), must contain, in the following order, the appropriate division headings and following separate divisions: (1) A table of contents, with page references; (2) a table of cases (alphabetically listed), statutes, and other authorities cited, with references to the page of the brief where they are cited, unless the case is expedited under Rule 47; (3) a statement of the issues; (4) a statement of the case, showing briefly the nature of the case, the course of proceedings, the result below, and the facts relevant to the issues, with appropriate references to the record on appeal; (5) an argument, beginning with a summary and containing the appellant's contentions with respect to the issues and the reasons for those contentions, with citations to the authorities and parts of the record on appeal relied on; and (6) a short conclusion stating the precise relief sought.

[3] As recognized by the majority, briefs of self-represented appellants are governed by Rule 28(I), which exempts them from adhering to the form set forth in Rule 28(a), and which provides: "Only a self-represented party may submit, without regard to the requirements of subsection (a) and Rule 32, an informal brief on the form provided by the Court."

17

Secretary fails to satisfy its burden of proving that such notice error is not prejudicial, there is only one course of action: The matter must be remanded. This requirement could not have been put more directly or succinctly by the Federal Circuit: "[W]e hold that the [Veterans Claims Assistance Act] notice errors should be presumed prejudicial, *requiring reversal unless the VA can show* that the error did not effect the essential fairness of the adjudication. To do this, the VA must persuade the reviewing court that the purpose of the notice was not frustrated." *Id*. (emphasis added).

Fourth, in *Sanders*, the Federal Circuit went to great pains to explain how such a method of analysis fits within the general rule of prejudicial error, stating that "[a] presumption of prejudice does not require reversal in all instances of [section 5103(a)] notice error. Only in situations *where the VA cannot rebut the presumption* would reversal be warranted." *Id*. at 891 (emphasis added).

*Newhouse* followed *Sanders*. *Newhouse v. Nicholson*, 497 F.3d 1300 (Fed. Cir. 2007). In *Newhouse*, the Federal Circuit upheld this Court's finding of a non-prejudicial notice error, holding that we have the statutory obligation to take into account whether prejudicial error existed, even in the absence of a Board finding on that issue. *Id*. at 1302. The Federal Circuit, thus, dismissed the appellant's argument that when notice error was found, the Court had to remand the matter to the Board for it to determine in the first instance whether the error was harmless. Nowhere in the decision does *Newhouse* relieve the Secretary of his burden under Rule 28(b) to articulate his case for non-prejudicial error. Indeed, the *Newhouse* decision goes on to quote *Sanders* with approval for the proposition that "the *Secretary is required to persuade* the [C]ourt that the purpose of the notice was not frustrated – e.g., by demonstrating … that any defect in the notice was cured by actual knowledge on the part of the claimant." *Newhouse*, 497 F.3d at 1302 (quoting *Sanders*, 487 F.3d at 887) (emphasis added). The Federal Circuit's discussion in *Newhouse* of review of the administrative record to make a prejudice determination must be read in the factual context of that decision.

In *Mlechick*, decided after *Newhouse*, the Federal Circuit overruled this Judge's single-judge decision, relying on *Pelegrini v. Principi,* to find that it would be speculative and, thus, impossible to apply the rule of prejudicial error in certain circumstances where the appellant established a notice error. *Mlechick v. Mansfield*, 503 F.3d 1340, 1344 (Fed. Cir. 2007); *see also Pelegrini v. Principi*, 18 Vet.App. 112, 120 (2004). *Mlechick* cites both *Sanders* and *Newhouse* in its decision, stating:

Given this framework [i.e., the framework established in *Sanders* and *Newhouse*], the

18

Veterans Court should have first presumed that any inadequacies in the notice [Mr.] Mlechick received were prejudicial. *See* [*Sanders*, 487 F.3d at 889]. Next, the Veterans Court should have determined *whether VA had overcome* the presumption that the notice error was prejudicial *by demonstrating* that the "error did not affect the essential fairness of the adjudication." *Id*. In conducting this inquiry the Veterans Court can review the entire "record of the proceedings before the Secretary and the Board" in determining whether an error was non-prejudicial. *Newhouse* [, 497 F.3d at 1302]; 38 U.S.C. § 7261(b)(2). Thus, the Veterans Court's inquiry should have included a review of the record *to determine if VA had met its burden of showing that the notice error was non-prejudicial.*

503 F.3d at 1345 (emphasis added). In short, in assessing the prejudicial effect of a notice error, the Court's review of the administrative record is not intended to be an unrestrained review but is limited to determining the validity of the Secretary's allegations that the error in the notice was not prejudicial.

Most recently, the Federal Circuit decided *Wilson v. Mansfield*. 506 F.3d 1055 (Fed. Cir. 2007). In *Wilson*, the issue was whether section § 5103(a) requires VA to advise the veteran of precisely what evidence was missing in his claims file in order for the claim to be successful. The Federal Circuit found section 5103(a) was not so inclusive. *Wilson* is significant, however, in that the Federal Circuit, as the majority does here, recognizes the extensive nature of the procedures involved in the adjudication of a claim for VA benefits. *Id*. at 1060-62. Unlike the conclusion drawn by the majority, however, *Wilson* does not hold that those procedures provide an alternative basis for finding section 5103(a) notice compliance. Indeed, *Wilson* cites *Sanders* and the Federal Circuit's decision in *Mayfield* for the proposition that section 5103(a) notice is intended to require VA to provide affirmative notification to the claimant *prior to* the initial decision in the case, and not that post-adjudicatory procedures can serve to render a notice error non-prejudicial through their existence alone. *Id.* at 1062.

*2. Application of the Federal Circuit Decisions to the Majority Opinion*

In considering the application of recent Federal Circuit precedent in this case, it is important to note that, other than an argument based on our now defunct *Mayfield* analysis, the **only** argument made by the Secretary that any notice error should be found harmless is that Mr. Vasquez-Flores had actual knowledge of the notice elements and, thus, the purpose for which the notice requirement was

19

instituted was not frustrated.[4]

The majority makes several important omissions when quoting the abundance of recent Federal Circuit precedent regarding section 5103(a) notice. Although the majority cites *Sanders* and this Court's Rule 28(a) for the proposition that "an appellant generally must demonstrate error," the words "demonstrate error" only appear in *Sanders*, which explains that its holding "does not displace the rule that the claimant bears the burden of *demonstrating error* in the [section 5013(a)] notice." *See ante* at 8; *see also Sanders*, 487 F.3d at 891 (citing Rule 28(a)) (emphasis added). However, the majority fails to find that this rule applies to the Secretary under Rule 28(b), which makes Rule 28(a) applicable to the Secretary's briefing as well.[5] This is important where, as here, the majority would seek to impose a pleading requirement on an appellant to show a notice error, but would not, in turn, require the Secretary to so plead a theory under which the alleged error *did not* result in prejudice. As explained below, the majority would decline to do so, as it would prefer to conduct an unrestrained search of the record to look to post-initial-adjudication procedures to support findings of no prejudice in cases where the Secretary is otherwise unable to rebut the presumption of a prejudicial notice error. *Cf. Sanders*, 487 F.3d at 889 ("[W]e hold that the [section 5103(a)] notice errors should be presumed prejudicial, requiring reversal unless the VA can show that the error did not affect the essential fairness of the adjudication."); *see also Mlechick*, 503 F. 3d at 1345 (same).

The majority's application is wrong on two counts. First, the Secretary failed to make any argument that procedures following the initial adjudication eliminated the presumptive prejudice of the notice error. Because of this pleading failure, and because the Secretary presented no other viable arguments that any notice errors were rendered non-prejudicial, reversal is required under *Sanders*. *Sanders*, 487 F.3d at 889; *see also* U.S. VET. APP. R. 28(b). Second, the Federal Circuit has on several occasions expressed its view that post-adjudication procedures alone cannot satisfy the fundamental purpose for which the pre-adjudication notice requirements of 5103(a) were established. *See Sanders*, 487 F. 3d at 886 ("VA's duty to notify cannot be satisfied 'by various

---

[4] After the Federal Circuit's decision in *Sanders*, both parties were given the opportunity to supplement their arguments with regard to prejudicial error. *See* Misc. Order No. 14-07 (July 3, 2007) (en banc order). The Secretary chose not to do so in this case.

[5] Rule 28(b)(1) states in full: "The Secretary must file a brief, which must conform to the requirements of subsection (a), but a statement of the issues or of the case need not be made unless the Secretary is dissatisfied with the appellant's statement."

20

post-decisional communications from which a claimant might have been able to infer what evidence the VA found lacking in the claimant's presentation,' as such post-decisional notices do not contain the same content or serve the same purpose as § 5103(a) notification." (quoting *Mayfield*, 444 F.3d at 1333-34)). The majority's attempt here to establish that the notice may be provided at any time prior to the Board's decision–the decision we review–is clearly at odds with the Federal Circuit's holding in *Mayfield* and with the purpose of section 5013(a). *See ante* n.2; *see also Mayfield*, 444 F.3d at 1333 ("The purpose of [section 5103(a)] and the corresponding regulation is to require that the VA provide affirmative notification to the claimant prior to the initial decision in the case . . . . [and] is not satisfied by various post-decisional communications . . . ."). The majority's view would, in effect, define the "initial decision" as the Board decision. Given the clear statements of the Federal Circuit in its decision in *Mayfield* and in its post-*Mayfield* decisions to the contrary, such an interpretation is simply wrong. I do not suggest that the Court is prohibited from considering, in a particular case, the facts that occur in the VA adjudication scheme along with other facts in the record in order to determine, upon proper pleading by the Secretary, that despite not receiving proper 5103(a) notice, the purpose of 5103(a) notice has not been frustrated and thus the claim's adjudication has been essentially fair. However this Court must not ignore the importance of pre-initial-decision section 5103(a) notice, consistently reinforced by the Federal Circuit. By making the Board decision the point by which affirmative notice must be provided, it is the majority that puts blinders on the Court's consideration of prejudicial error by determining that the mere participation in the VA adjudication scheme alone should erase the prejudicial effect of a 5103(a) notice violation.[6] If Congress, in enacting section 5013(a), and the Federal Circuit, in interpreting it, meant for such a gaping exception to the rule of prejudicial error to exist, surely it would have referred to the administrative process in considering prejudice. However, it has not. Indeed, in its

---

[6] *See* 38 U.S.C. § 5103(a) (requiring VA to provide notice to a claimant upon receipt of a "substantially complete application" for benefits); *see also* 38 U.S.C. § 7105(b) (Notice of Disagreement "shall be filed within one year from the date of mailing the notice of the result of the *initial* review or determination" (emphasis added)); *see also* 38 U.S.C. § 7105(a) ("Appellate review will be initiated by a [N]otice of [D]isagreement and completed by a [S]ubstantive [A]ppeal after a statement of the case is furnished . . . ."). There are, in my view, three distinct stages in the VA adjudication process: The initial decision, appellate status at the agency of original jurisdiction (which is triggered by a Notice of Disagreement), and the appeal to the Board (which commences with the filing of the Substantive Appeal). The Federal Circuit's *Sanders* holding that proper notice must be provided before the initial adjudication is, in my view, logically within this framework.

21

decision in *Mayfield*, the Federal Circuit found just the opposite; it found a 5103(a) notice error when the Board considered notices provided to Ms. Mayfield after the initial regional office decision but before she filed her Substantive Appeal to the Board as satisfying 5103(a) notice requirements.

*Sanders* provides three examples of situations that, if proven by the Secretary, could rebut the presumption of prejudice. *Sanders*, 487 F.3d at 889. The majority in this case subtly ignores the requirement of reversal, instead finding that where the Secretary has not rebutted the presumption of prejudice and the three enumerated examples do not apply, reversal may merely be "warranted." *Ante* at 9. This is so because without ignoring the reversal requirement, the majority could not attempt to create a new route to a finding of no prejudice, stating that the Court should "consider whether the post-adjudicatory notice and opportunity to develop the case that is provided during the extensive administrative appellate proceedings leading to the final Board decision . . . served to render any pre-adjudicatory notice error non-prejudicial." *Id.* at 9-10; *see ante* n.2. The Federal Circuit has had several opportunities, discussed *supra*, to provide additional examples that would require reversal where a notice error exists, but has not indicated that the **post-adjudicatory** process alone could serve to cure such notice deficiencies. *See Wilson*, 506 F.3d at 1062 ("Within this detailed procedural scheme, section 5103(a) serves to facilitate the claim process by ensuring 'that the claimant be given the required information prior to the VA's decision on the claim and enables the claimant to understand the process . . . .'"). The point of the prejudice analysis in *Sanders* is to ensure "that the purpose of the notice was not frustrated." *Sanders*, 487 F.3d at 889. I cannot agree with my colleagues that the Court can, *sua sponte*, look only to the post-adjudicatory proceedings to find that the purpose of providing claimants with proper pre-adjudicatory section 5103(a) notice was not frustrated.

By expanding the recognized "examples" to the prejudice analysis beyond those endorsed by the Federal Circuit, the majority, at a minimum, induces confusion regarding how this Court is to apply this mysterious fourth example in determining whether a notice error is prejudicial. By judging the prejudicial effect of inadequate notice in terms of the subsequent adjudication of the claim, I believe the Court runs afoul of the original purpose of the duty to notify. Although the majority refers to the Federal Circuit's recent *Newhouse* decision to support its view that it may scour the record for support of a finding of no prejudice in the absence of allegations by the

22

Secretary, nowhere in the *Newhouse* decision, nor in *Mlechick* or *Wilson* does the Federal Circuit abandon *Sanders*' command to reverse the Board's decision if the Secretary fails to fulfill his obligation to rebut the presumption of prejudice. Nor do those decisions suggest that the Court can use only the appellate history of a claim to find that the purpose of pre-decisional notice was satisfied. Indeed, in the dissent from the denial of full-Court consideration in *Overton*, three judges of this Court believed that the majority had improperly shifted its focus away from compliance with the duty to notify prior to the initial adjudication. *See Overton*, 20 Vet.App. at 500 (en banc; Hagel, J., Davis, J., and Schoelen, J., dissenting) ("The effect of the Court's decision is that compliance with section 5103(a) now plays second fiddle to this Court's determination as to whether a claimant engaged in 'meaningful participation' in the processing of the claim.").

Finally, and perhaps most significantly, the majority, after advocating their new example, finds that it has no application in this case, rendering the exercise contained in sections A(4) and A(5) quintessential *obiter dicta*. *See*, *e.g.*, BLACK'S LAW DICTIONARY 1100 (7th ed. 1999) ("A judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential."). The majority's creation of a new example by which the Court may find a notice error non-prejudicial when that example is neither applicable in this case nor argued by the parties, is far from necessary to the resolution of this case. At best it can be said that the majority recognizes an issue that may someday be raised and thus require resolution by the Court, but its attempt here to answer a question not dispositive of the appeal renders the discussion non-precedential.

For reasons unknown to me and despite the Federal Circuit's continued insistence on compliance with the pre-adjudicatory notice requirements of the Veterans Claims Assistance Act, my colleagues persist in their quest to find no prejudice through a review of post-adjudicatory procedures. As a consequence, I concur only in the result and again voice my concern with the majority's language as it amounts to the subtle yet clear minimization of the duty to notify. In the end, I disagree with my colleagues to the extent that they might suggest that an appellant's post-adjudicatory participation in the overall VA appellate process could alone render a duty-to-notify error non-prejudicial, their apparent view that the Court, in section 5103(a) notice cases, is free to search the record for reasons not pled by the Secretary in order to find harmless error, and their failure to properly apply the law of the Federal Circuit.