Citation Nr: 1121869 
Decision Date: 06/06/11 Archive Date: 06/20/11

DOCKET NO. 05-38 949 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida



THE ISSUE

Entitlement to an evaluation in excess of 10 percent for cervicothoracic arthritis. 



REPRESENTATION

Appellant represented by: Disabled American Veterans



ATTORNEY FOR THE BOARD

Christopher Maynard, Counsel



INTRODUCTION

The Veteran had active service from February 1942 to September 1945. 

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from a February 2005 decision by the RO which assigned an increased evaluation to 10 percent for the Veteran's cervicothoracic arthritis, effective from September 30, 2004, the date of receipt of his claim for increase. 38 C.F.R. § 3.400(o)(2). The Board remanded the appeal for additional development in October 2008. 

In a December 2009 decision, the Board denied the claim for an evaluation in excess of 10 percent, and the Veteran appealed that decision to the United States Court of Appeals for Veterans Claims (hereinafter, "the Court"). Pursuant to a July 2010 Joint Motion for Remand, the Court vacated the Board's decision and remanded the matter for compliance with the terms of the Joint Motion. The Board remanded the appeal for additional development in February 2011. 

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 2002). 


FINDINGS OF FACT

1. All evidence necessary for adjudication of this claim have been obtained by VA. 

2. The Veteran's cervicothoracic spine disability is manifested by pain, limitation of motion and arthritis, with forward flexion greater than 30 degrees and combined range of motion greater than 170 degrees and no neurological symptomatology; functional loss of use due to pain or during flare-ups to a degree commensurate with the criteria for a higher evaluation is not demonstrated. 



CONCLUSION OF LAW

The criteria for an evaluation in excess of 10 percent for cervicothoracic arthritis are not met. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.159, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003-5237 (2010). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Before addressing the merits of the Veteran's claims on appeal, the Board is required to ensure that the VA's "duty to notify" and "duty to assist" obligations have been satisfied. See 38 U.S.C.A. §§ 5103, 5103A (West 2002); 38 C.F.R. § 3.159 (2010). The notification obligation in this case was accomplished by way of a letter from the RO to the Veteran dated in October 2004. Additionally, more detailed explanations of VA's duty to assist under the holding in Dingess v. Nicholson, 19 Vet. App. 473 (2006) and under Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008), were sent to the Veteran and his representative in March 2006, and November 2008, respectively. The claim was readjudicated and a supplemental statement of the case (SSOC) was promulgated in August 2009. Thus, the Board finds that the notification requirements of the VCAA have been satisfied as to both timing and content. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). See Quartuccio v. Principi, 16 Vet. App. 183 (2002); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F. 3d 1328 (Fed. Cir. 2006); Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

The RO also provided assistance to the Veteran as required under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c), as indicated under the facts and circumstances in this case. The Veteran was examined by VA twice during the pendency of this appeal and was afforded an opportunity for a personal hearing, but declined. Further, the Veteran has not made the RO or the Board aware of any additional evidence that needs to be obtained in order to fairly decide this appeal, and have not argued that any error or deficiency in the accomplishment of the duty to notify and duty to assist has prejudiced him in the adjudication of his appeal. See Shinseki v. Sanders, 129 S.Ct.1696 (2009) (Reversing prior case law imposing a presumption of prejudice on any notice deficiency, and clarifying that the burden of showing that an error is harmful, or prejudicial, normally falls upon the party attacking the agency's determination.); Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F. 3d 1328 (Fed. Cir. 2006). Therefore, the Board finds that duty to notify and duty to assist have been satisfied and will proceed to the merits of the Veteran's appeal. 

Increased Ratings - In General

In general, when an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). When the appeal arises from an initial assigned rating, consideration must be given to whether staged ratings should be assigned to reflect entitlement to a higher rating at any point during the pendency of the claim. Fenderson v. West, 12 Vet. App. 119 (1999). However, staged ratings are also appropriate in any increased-rating claim in which distinct time periods with different ratable symptoms can be identified. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4. The percentage ratings in VA's Schedule for Rating Disabilities (Schedule) represent as far as can practicably be determined the average impairment in earning capacity resulting from such disabilities and their residual conditions in civil occupations. 38 C.F.R. § 4.1. 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective enervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.10, 4.40, 4.45. 

Factual Background & Analysis

The Veteran contends that he has pain and stiffness in his upper back and neck and believes that his cervicothoracic spine disability is more severe than reflected by the 10 percent evaluation currently assigned. 

While the Veteran is competent to offer evidence as to the visible symptoms or manifestations of a disease or disability, his belief as to its current severity under pertinent rating criteria or the nature of the service-connected pathology is not probative evidence. Only someone qualified by knowledge, training, expertise, skill, or education, which the Veteran is not shown by the record to possess, may provide evidence requiring medical knowledge. Layno v. Brown, 6 Vet. App. 465, 470 (1994); Grottveit v. Brown, 5 Vet. App. 91, 92-93 (1993); Espiritu v. Derwinski, 2 Vet. App. 492, 494-95 (1992). 

The Veteran's cervical spine disability is currently rated 10 percent disabling under Diagnostic Code 5003, for arthritis of the spine. DC 5003 specifies that degenerative arthritis established by x-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved (DC 5200 etc.). When however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under diagnostic code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 38 C.F.R. § 4.45. 

Because the Veteran has arthritis of the cervicothoracic spine, the Board must also consider whether a higher evaluation is warranted under the General Rating Formula for Diseases and Injuries of the Spine or under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, whichever method results in the higher evaluation when all disabilities are combined under § 4.25. 38 C.F.R. § 4.71a, The Spine, Note (6) (2010). 

Under the General Rating Formula, a 10 percent evaluation is assigned when forward flexion of the cervical spine is greater than 30 degrees, but not greater than 40 degrees; or, the combined range of motion of the cervical spine is greater than 170 degrees, but not greater than 335 degrees; or there is muscle spasm, guarding or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is warranted when forward flexion of the cervical spine is greater than 15 degrees, but not greater than 30 degrees; or the combined range of motion of the cervical spine is not greater than 170 degrees; or there is muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 30 percent requires forward flexion of the cervical spine to 15 degrees or less; or with favorable ankylosis of the entire cervical spine. A 40 percent rating is assigned if the medical evidence shows unfavorable ankylosis of the entire cervical spine. A 100 percent rating is warranted if there is unfavorable ankylosis of the entire spine. These ratings are warranted if the above-mentioned manifestations are present, with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease. 38 C.F.R. § 4.71a, DCs 5235 to 5243 (2010). 

The rating criteria under the General Formula for Diseases and Injuries of the Spine also provide, in pertinent part, the following Notes: 

Note (1): Evaluate any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, separately, under an appropriate diagnostic code. 

Note (2): (See also Plate V.) For VA compensation purposes, normal forward flexion of the cervical spine is zero to 45 degrees; extension is zero to 45 degrees; left and right lateral flexion are zero to 45 degrees; and left and right lateral rotation are zero to 80 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The combined normal range of motion of the cervical spine is 340 degrees. The normal ranges of motion for each component of the spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion. Id. 

Under the Formula Based on Incapacitating Episodes, a 10 percent evaluation is assigned with incapacitating episodes having a total duration of at least one week but less than two weeks during the past 12 months; a 20 percent evaluation is assigned with incapacitating episodes of having a total duration of at least two weeks but less than four weeks during the past 12 months; a 40 percent evaluation is assigned with incapacitating episodes of having a total duration of at least four weeks but less than six weeks during the past 12 months; and a 60 percent evaluation is assigned with incapacitating episodes of having a total duration of at least six weeks during the past 12 months. Id. 

Note (1): For purposes of evaluations under 5243, an incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. 

Note (2): If intervertebral disc syndrome is present in more than one spinal segment, provided that the effects in each spinal segment are clearly distinct, evaluate each segment on the basis of incapacitating episodes or under the General Rating Formula for Diseases and Injuries of the Spine, whichever method results in a higher evaluation for that segment. 

Evaluation of neurologic disabilities includes consideration of DC 8510 that addresses the upper radicular group (5th and 6th cervicals), pertaining to the shoulders and elbows; DC 8511 addresses the middle radicular group pertaining to movement of the arms, elbows, and wrists; DC 8512 addresses the lower radicular group which controls use of hands and fingers. 38 C.F.R. § 4.124a; DCs 8510 - 8512, respectively, (2010). Here, however, the Veteran is not shown to have any significant neurological impairment associated with his service-connected cervicothoracic spine disability. Therefore, consideration of a separate rating for additional neurological disability is not warranted. 

The Veteran was examined by VA for his upper back disability twice during the pendency of this appeal (December 2004 and May 2009). The Veteran did not report any outpatient treatment by VA or any private healthcare providers for his service-connected disability at anytime during the pendency of this appeal, nor do the VA and private medical outpatient reports of record reflect any such treatment. The Veteran's complaints and the clinical and diagnostic findings on the two VA examinations were not significantly different and showed some limitation of motion without any neurological deficits or any bowel or bladder impairment. (In this regard, it is noted the Veteran reported chronic back pain radiating up into his right shoulder area on a daily basis. However, service connection for a right shoulder disability was denied by the RO in October 2006. The Veteran and his representative were notified of this decision and did not appeal. Additionally, the VA examiner's indicated that the mild neurological manifestations in the Veteran's right upper extremity were due to his prior stroke and not related to his cervicothoracic spine disability.) 

When examined by VA in December 2004, the Veteran reported a dull constant pain in his neck with intermittent sharp pain at the base of his occiput and radiating into his right shoulder, but denied any current treatment for his cervicothoracic spine disability. The Veteran also denied any incapacitating episodes of cervicothoracic pain or any prescribed bedrest. On examination, forward flexion of the cervical spine was to no less than 40 degrees, with extension to no less than 32 degrees. The combined range of motion of the cervical spine was to 232 degrees. The Veteran demonstrated moderate cervical paraspinal muscle spasm from occiput to C7. Motor function of the upper extremities was 5/5. X-ray studies revealed moderate multilevel cervical degenerative disc disease and early osteoarthritic changes in the thoracic spine with good preservation of disc space height. The impression included cervicothoracic degenerative disc disease without significant radiculopathy, and moderate mechanical neck pain. The examiner indicated that the Veteran could not be stress tested for functional impairment on repetitive motion because of his nonservice-connected cardiovascular disability and history of a stroke, and noted that the Veteran's predominant difficulty with use of his right upper extremity was secondary to his stroke. 

When examined by VA in May 2009, the examiner indicated that the claims file was reviewed and included a description of the Veteran's complaints, medical history, and objective findings on examination. The Veteran complained of fatigue, decreased motion, stiffness, and pain, and denied any muscle spasm, paresthesias, or numbness. The Veteran reported that he could walk from one to three miles with a cane. On examination, there was no listing, kyphosis, lordosis or scoliosis. There was pain on motion of the cervical spine at the end ranges of motion, with right paraspinal spasm and tenderness, but no muscle atrophy, guarding, or weakness. There was no muscle spasm, atrophy, guarding, tenderness, weakness or pain on motion of the thoracic spine. The Veteran had some decreased sensation in the right upper and lower extremity due to his history of a stroke, otherwise all neurological findings were within normal limits. Forward flexion of the cervical spine was to 40 degrees, with extension to 45 degrees. Lateral flexion of the cervical spine was to 30 on the left and to 25 degrees on the right, with lateral rotation to 50 degrees, bilaterally. The combined range of motion of the cervical spine was to 240 degrees. The examiner noted that there was evidence of painful motion of the cervical spine but no objective evidence of pain on motion of the thoracic spine, and no evidence of additional limitation of motion due to pain, on repetitive movement or due to fatigue, weakness, or incoordination in either spinal segments. 

In this case, the objective medical evidence of record showed that the Veteran has good range of motion with no evidence of atrophy, weakness or significant neurological symptoms associated with his cervicothoracic spine disability. Limitation of forward flexion of the cervical spine was to no less than 40 degrees with the most severe combined range of motion to no less than 232 degrees. Applying the clinical findings to the General Rating Formula discussed above, the Veteran's cervicothoracic spine disability equates to no more than a 10 percent evaluation. 

In addition, the evidence does not show, nor does the Veteran claim to have had any incapacitating episodes (periods of acute signs and symptoms that requires bed rest prescribed by a physician and treatment by a physician) at anytime during the pendency of this appeal. Other than chronic pain, the objective medical evidence does not show any associated neurological impairment, and the Veteran denied any bowel or bladder problems. Thus, a rating in excess of 10 percent based on incapacitating episodes is not warranted. 

The Board has also considered whether an increased evaluation is in order in this case when separately evaluating and combining the orthopedic and neurologic manifestations of the Veteran's cervical spine disability under the orthopedic rating criteria and applicable neurologic rating criteria. 

In this regard, there was no evidence of any weakness, sensory loss, or muscle atrophy in his neck or upper extremities associated with his service-connected cervicothoracic spine disability on the two VA examinations. As noted above, while the Veteran has some mild neurological symptoms of decreased sensation and reflexes in the right upper extremity, the VA examiner's reported that the symptoms were not related to his cervicothoracic spine disability, but were residuals of a prior stroke. Based on the clinical and diagnostic evidence of record, the Board does not find that the evidence shows clinically significant symptoms compatible with sciatic neuropathy associated with the Veteran's cervicothoracic spine at any time during the pendency of this appeal. Therefore, a compensable evaluation is not warranted under any of the applicable rating codes pertaining to the radicular groups involving the cervical spine discussed above. 38 C.F.R. § 4.124a; DCs 8510-8512. As such, consideration of separately evaluating and combining the neurologic and orthopedic manifestations of the Veteran's cervicothoracic spine disability would not result in a higher rating. 

Consideration must also be given to any functional impairment of the Veteran's ability to engage in ordinary activities and the effect of pain on the functional abilities. 38 C.F.R. §§ 4.10, 4.40, 4.45, 4.59 (2010). 

In this regard, the Board observes that under the Rating Schedule, the general rating formula provides that the rating criteria are to be applied with or without symptoms such as pain, stiffness, or aching in the area of the spine affected by residuals of injury or disease. Other than the Veteran's report of pain, there was no evidence of visible behavior or adequate pathology to suggest that any additional functional impairment was commensurate with the criteria necessary for an evaluation in excess of 10 percent. 

Moreover, the question of functional loss due to pain and other related factors was specifically addressed by the VA examiner in May 2009. Although the Veteran had pain and some decreased motion of the cervicothoracic spine, there was no additional functional limitation due to pain, fatigue, weakness, incoordination, or lack of endurance following repetitive use, and no evidence of weakness or atrophy. 

The Court has held that, "a finding of functional loss due to pain must be supported by adequate pathology and evidenced by the visible behavior of the claimant. 38 C.F.R. § 4.40." Johnston v. Brown, 10 Vet. App. 80, 85 (1997). As noted above, there was no evidence of muscle weakness, atrophy, or neurological impairments, and the range of motion demonstrated is specifically contemplated by the rating schedule. Therefore, the Board finds that an increased evaluation for the cervicothoracic spine disability based on additional functional loss due to the factors set forth above are not demonstrated. 

Applying the appropriate diagnostic codes to the facts of this case, the objective assessment of the Veteran's present impairment from his cervicothoracic spine disability does not suggest that he has sufficient symptoms so as to a warrant an evaluation in excess of 10 percent. Accordingly, the Board finds that the 10 percent evaluation assigned for the cervicothoracic spine disability accurately depicts the severity of the condition during the pendency of this appeal, and there is no basis for a higher staged rating. See Fenderson v. West, 12 Vet. App. 119 (1999). 

Additionally, the Board has considered whether the case should be referred to the Director of the VA Compensation and Pension Service for extraschedular consideration under 38 C.F.R. § 3.321(b)(1) (2010). Here, the Veteran does not claim nor does the record show any periods of hospitalization for his cervicothoracic spine disability, nor is there any objective evidence of marked interference with employment due solely to the service-connected disability. The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993) ("[R]ating schedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical."). Based on the facts in this case, the Board finds that the manifestations of the Veteran's cervicothoracic spine disability are consistent with the schedular criteria, and there is no objective evidence that any manifestations related to the service-connected disability are unusual or exceptional. In view of this, referral of this case for extraschedular consideration is not in order. See Thun v. Peake, 22 Vet. App. 111 (2008); Floyd v. Brown, 9 Vet. App. 88, 95 (1996); Bagwell v. Brown, 9 Vet. App. 337 (1996); see also Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993) (noting that the disability rating itself is recognition that industrial capabilities are impaired). 

Finally, the Board notes that, in Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court held that a claim for a total rating based on individual unemployability (TDIU) is part of an increased rating claim when such claim is expressly raised by the Veteran or reasonably raised by the record. The Court further held that when evidence of unemployability is submitted at the same time that the Veteran is appealing the initial rating assigned for a disability, the claim for TDIU will be considered part of the claim for benefits for the underlying disability. Id. 

In this regard, the Board finds that a claim for a TDIU was not expressly raised by the Veteran or reasonably raised by the record. The Veteran is 90 years old and has been retired for many years. Furthermore, the Veteran has not offered any competent medical or lay evidence that his current cervicothoracic spine disability renders him unemployable. Based on the evidence of record, the Board finds that further consideration of a TDIU is not warranted. 


ORDER

An increased evaluation for cervicothoracic arthritis is denied. 




____________________________________________
MICHAEL E. KILCOYNE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs