Citation Nr: 1205193 
Decision Date: 02/10/12 Archive Date: 02/23/12

DOCKET NO. 10-20 086 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boise, Idaho


THE ISSUE

Entitlement to an increased rating for post-traumatic stress disorder (PTSD), currently evaluated as 30 percent disabling.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

F. Yankey, Counsel

INTRODUCTION

The Veteran served on active duty from August 2001 to August 2004. This case comes before the Board of Veterans' Appeals (Board) on appeal of an August 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Boise, Idaho, which in pertinent part denied an increased rating for PTSD.

The Veteran testified before the undersigned at a July 2011 Travel Board hearing. The hearing transcript is of record. 

The Veteran submitted additional medical evidence, which has not yet been considered by the RO. However, the Veteran waived initial RO consideration of that evidence.

The issue of total disability evaluation based upon individual unemployability, due to service-connected disabilities (TDIU) is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDING OF FACT

The Veteran's PTSD is manifested throughout the appeal by deficiencies in most of the areas of work, school, family relations, judgment, thinking and mood without total social and occupational impairment.


CONCLUSION OF LAW

The criteria for a 70 percent rating, but not greater, for PTSD are met throughout the appeal. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.321(b), 4.1, 4.2, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411 (2011).


REASONS AND BASES FOR FINDING AND CONCLUSION

Legal Criteria

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4 (2011). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2011). 

Each disability must be considered from the point of view of the Veteran working or seeking work. 38 C.F.R. § 4.2 (2011). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Although a rating specialist is directed to review the recorded history of a disability in order to make a more accurate evaluation, see 38 C.F.R. § 4.2, the regulations do not give past medical reports precedence over current findings. Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods.

A 30 percent rating is warranted for PTSD if there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 50 percent rating is warranted for PTSD if it is productive of occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 70 percent rating is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near- continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 100 percent evaluation is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130, Diagnostic Codes 9411. 

In assessing the evidence of record, it is important to note that the Global Assessment of Functioning (GAF) score is based on a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Richard v. Brown, 9 Vet. App. 266, 267 (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th ed. (DSM-IV) at 32). 

Scores ranging from 31 to 40 reflect "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up other children, is defiant at home, and is failing at school)." Id.

A score of 41 to 50 is indicated where there are "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." Id.
A score of 51-60 is appropriate where there are, "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning, (e.g., few friends, conflicts with peers or co-workers)." Id. 

A score of 61-70 is indicated when there are, "Some mild symptoms (e.g., depressed mood and mild insomnia OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id. 

In accordance with 38 C.F.R. §§ 4.1, 4.2 (2007) and Schafrath v. Derwinski, 1 Vet. App. 589 (1991), the Board has reviewed all evidence of record pertaining to the history of the service-connected disability at issue. The Board has found nothing in the historical record which would lead to the conclusion that the current evidence of record is not adequate for rating purposes. Moreover, the Board is of the opinion that this case presents no evidentiary considerations which would warrant an exposition of remote clinical histories and findings pertaining to this disability. 

Evidence

In a March 2006 rating decision, the RO granted service connection for PTSD, with a 30 percent evaluation, effective October 24, 2005.

In a January 2008 rating decision, the RO continued the 30 percent evaluation for the Veteran's service-connected PTSD.

VA outpatient treatment records from the Pocatello Community Based Outpatient Clinic (CBOC) show that in January 2009 the Veteran reported that Citalopram had greatly improved his PTSD, but he still experienced some anxiety and depression, as well as nightmares and flashbacks, albeit with reduced frequency and intensity. He had recently obtained a job at an insurance company, and was doing well at it, and was still in school. He reported experiencing stress over his new job, his wife getting laid off and bills, but he was optimistic about the future. He opted to try counseling instead of an increase in medication. 

The notes also indicate that his energy level was normal to low; his concentration was normal; his interest in activities was normal; he experienced occasional irritability and anger, and occasional anxiety and nervousness. He reported that his mood was at a level 5 on a scale of 1-10. He denied suicidal or homicidal ideation, hallucinations or substance abuse. He also reported frequent contact with others.
On mental status examination, he had good hygiene and behaved in an appropriate manner. His mood was euthymic and his affect was appropriate. Speech was normal; cognition was in normal range; and insight and judgment were good. He was diagnosed with PTSD (improved by medications) and depressive disorder (noted to be in partial remission). He was assigned a GAF score of 55.

In June 2009, the Veteran filed a claim for an increased rating, contending that his PTSD had gotten worse, even with the prescription drugs that he was taking on a regular basis. He claimed that he was experiencing sleep deprivation, increased nightmares, flashbacks, and depression, which was preventing him from successfully maintaining a job and enjoying his usual daily activities. See June 2009 statement.

The Veteran was afforded a VA examination in July 2009, in response to his claim for an increased rating. The Veteran reported sleep impairment, nightmares and flashbacks, and reported that loud explosions caused him extreme distress. He also reported short-term memory loss, constant anxiety and excessive worrying with sweaty palms, tense muscles and irritability, especially since his two-year old son was born. However, he denied obsessions, compulsions, or full-blown panic attacks. 

At the time of the examination, the Veteran was a full-time college student, with only marginal grades. He reported that he changed jobs frequently because of either dissatisfaction or poor performance, and his work history included nine jobs in five years, with the longest term of employment being two years. He reported that he preferred to work a job where he did not have to interact with people, such as his job at that time, assistant manager at Rent-A-Center. 

With regard to his family life, he reported that he argued often with his wife, and that although he loved his two-year old son, certain things he did annoyed him. He also reported that he had only one close friend, who lived in California, and whom he only talked to every one to three months by telephone. He also indicated that he was reluctant to pursue leisure activities that he once found enjoyable, such as reading, playing the guitar and camping. He also indicated that he was not attentive to his hygiene, in that he reported that he only showered every three to four days.

The Veteran also presented with symptoms of impaired impulse control, in that he denied any actual assaults during the previous four years, but reported that he frequently had the desire to physically assault people and experienced severe irritability, having on occasion, to be talked out of situations where he might have otherwise assaulted someone. He also reported buying random, unnecessary things.

On mental status examination, he was alert and oriented. He had good hygiene, was mildly anxious and "kind of pissed off". His affect was mildly restricted at times. He spoke in an intense tone, but with regular rhythm and volume, and he displayed an appropriate amount of verbality with no pressure. His immediate memory was good. He was calm and did not display inappropriate behavior. The examiner noted that he did not have suicidal ideation at that time, but that he did have suicidal ideation during the previous week, albeit without a plan. The Veteran denied homicidal ideation or hallucinations, and no delusional statements were made. The examiner also noted that the Veteran felt constantly on guard, but there was no psychotic level of paranoia. His ability to express himself was good; his thoughts were linear and well-organized, and there was no looseness of associations. Short-term memory was impaired, but long-term memory was good. No obsessive or ritualistic behavior was noted, and there were no particular obsessions that interfered with his normal daily activities.

The examiner diagnosed chronic PTSD and depression, related to PTSD, and assigned a GAF score of 50. The examiner also opined that the Veteran's PTSD symptoms resulted in deficiencies in most areas, such as work, school, family relations, judgment, thinking and mood. The examiner also found that the Veteran was not capable of managing his own financial affairs.

Based on the results from the July 2009 VA examination, the RO continued the 30 percent evaluation for PTSD in an August 2009 rating decision.
In a subsequently submitted August 2009 statement, the Veteran claimed that his depression and PTSD were worse than before. He also stated that in contradiction to what the July 2009 examiner reported, he was very dirty the day of his examination, and had not showered in four days. He claimed that he exhibited such poor hygiene on a constant basis. He also reported that he was alienating himself from people, and that he chose to work the graveyard shift by himself because people as a whole "pissed him off." The Veteran also reported having suicidal thoughts on a daily basis, and claimed that his medication was not working.

Outpatient treatment records from the VA Medical Center in Salt Lake City show that in September 2009, the Veteran requested to have his medications changed to something stronger. He complained of frequent nightmares, depression and anger issues. He reported that he had never started individual therapy as he had initially planned because it was hard for him to get to the hospital regularly, due to his nighttime work schedule and college classes during the day. He also complained of a lack of motivation, including to work, and reported that he avoided shopping at certain times of the day to avoid crowds. The Veteran also reported suicidal ideation with a plan, after fights with his wife on a weekly basis. 
In an October 2009 rating decision, the RO again continued the 30 percent evaluation for the Veteran's PTSD. 

In a subsequently received October 2009 statement, the Veteran continued to disagree with the 30 percent evaluation, and stated that he was on medication for his PTSD and anger issues. He also claimed to have frequent nightmares and anxiety. The Veteran also indicated that he was seeking counseling services for his PTSD. However, he also argued, in response to a recent rating decision that found him incompetent to handle disbursement of funds, that he was not a danger to anyone and therefore, he should have the right to bear arms.

In December 2009, the Veteran was subjected to a Field Examination to determine his competency to handle VA funds. During the examination, the Veteran was neat and clean and appropriately dressed. He reported that he was able to manage his activities of daily living, take care of his child, and do house chores. Although he admitted to changing jobs when he became bored or unproductive, he reported that he was working a night job in security at that time. He admitted that he had anger issues, including serious road rage. He also indicated that he had sleep impairment, in that his sleep patterns varied from sleeping all day to four hours per night. He also reported that he did not have any friends or other social outlets. The examiner found that the Veteran was competent to handle disbursement of his VA funds.

Treatment records from the Pocatello Vet Center show that in June 2010, the Veteran reported stress associated with a visit from his in-laws and frustrations with work. In July 2010, he reported that he had quit his job due to PTSD symptoms, including memory problems, which were affecting his performance. He also continued to complain of irritation with his mother-in-law, but reported that his wife was supportive. On mental status examination, he displayed symptoms of depression, anxiety and mild suicidal ideation. 

Treatment records from the Eastern Idaho Regional Behavioral Health Center show that in May 2011, the Veteran was admitted to the hospital following an attempted overdose with prescribed medication during a fight with his wife. The Veteran reported at that time that he became suicidal when fighting with his wife. The records also show that the Veteran was violent and had to be restrained by police officers who responded to a request for assistance from his wife at the time of his attempted overdose. During his two-day inpatient treatment, the Veteran reported that since his return from Iraq, he had experienced significant depression, with loss of interest in day-to-day activities; frequent nightmares; hypersensitivity; exaggerated startle response; intrusive recollections; anhedonia; sleep disturbance; irritability; impulsivity; and intermittent suicidal ideation. He also endorsed symptoms of anger and volatility, which he claimed predated his experience in the Iraq War, but were further exacerbated by conflict with his wife. He also reported that there had been increasing stress in his family due to his recent unemployment. 

On mental status examination, he was noted to have mildly impaired insight, as he substantially minimized the very traumatic episode with the police at the time of his suicide attempt. He was also noted to have impaired judgment, evident in the fact that he attempted to overdose on medication, and fought with the police who attempted to help him.

The notes indicate that the Veteran had a history of impulsivity and anger outbursts and that he was considered to be at moderate risk for self-harm, and at moderate risk for aggresivity in an inpatient setting. He was diagnosed with major depression, severe, recurrent; PTSD; and impulse control disorder, and assigned a GAF score between 30 and 35.

During continued therapy at the Pocatello Vet Center in June 2011, the Veteran was noted to have been recently suicidal and aggressive. His wife also called to request marital counseling during that time. He reported continued difficulty with opening up to others, as well as stress associated with job searching, his pregnant wife, and lack of time with his son due to job searching. He also continued to change jobs frequently and having periods of unemployment. He continued to complain of nightmares, and was noted on mental status examination to be anxious, with pressured speech. In July 2011, he continued to report difficulties with working due to his PTSD, and complained of irritability, mood stability problems, and difficulty communicating and interacting with others. He was still noted to suffer from anxiety.

During his July 2011 Travel Board hearing, the Veteran testified that he had increased nightmares, flashbacks and sleep deprivation. He also reported panic attacks more than once per week; short and long-term memory loss, which had negatively affected his school performance; impaired judgment and thinking, which resulted in impulsive behavior; low motivation; and depressed mood. 

With regard to his family relationships, he reported that his family life was worse, with him arguing more with his wife; that his relationship with his children and his extended family was troubled; and that he only had one friend. He also reported that he was suicidal when fighting with his wife. He claimed that he was receiving marital counseling.

The Veteran testified that he had held three or four jobs during the previous two years, all of which were short-term, due to his low motivation and inability to get along with co-workers. He reported that he was working alone in his current job, and that he was not making any money.

In a September 2011 statement, MS, the Veteran's counselor at LDS Family Services in Idaho Falls, indicated that the Veteran was seen that month and complained of PTSD symptoms, such as recurrent recollections of traumatic events in Iraq, nightmares, avoidance behavior, markedly diminished interest in hobbies and activities that he once enjoyed, sleep deprivation, impaired concentration and lack of focus at work. He diagnosed the Veteran with chronic PTSD. 


Analysis

The evidence of record shows that the Veteran has deficiencies in work, school, family relations, judgment, thinking and mood. These deficiencies are exhibited in symptoms which include impaired impulse control in the form of unprovoked irritability, anger outbursts, physical violence, and impulsive spending habits; near-continuous depression and consistent feelings of anxiety; suicidal ideation; impaired short-term memory, lack of concentration and focus; social isolation and marital problems; and difficulty adapting to stressful circumstances, such as work.

In January 2009, the Veteran had recently obtained a new job, which he was doing well at, and was optimistic about the future. However, just five months later, in June 2009, he reported that his PTSD symptoms, such as sleep deprivation, increased nightmares, flashbacks and depression, were preventing him from successfully maintaining a job. On VA examination in July 2009, he reported that he changed jobs frequently, and that he preferred to work in a setting where he did not have to interact with people. It was also noted that his work history included nine jobs in five years, with his employment changing at least three times in the previous year, and with his longest term of employment being only two years. The VA examiner opined that the Veteran's PTSD symptoms resulted in deficiencies in most areas, including work. In August 2009, the Veteran reported that he was alienating himself from people and that he chose to work the graveyard shift by himself because people "pissed him off." During VA outpatient treatment in September 2009, he complained of a lack of motivation, even for work. The Veteran was working a full-time night job in December 2009, but in July 2010, he reported that he had quit his job again due to his PTSD symptoms, including memory problems, which were affecting his performance. During counseling at the Vet Center from June to July 2011, and during counseling at LDS Family Services in September 2011, he continued to report difficulties with job searching, and with maintaining employment, due to his PTSD symptoms, including low motivation, inability to get along with co-workers, lack of concentration and lack of focus. He also continued to change jobs frequently and to report increases stress during periods of unemployment.

During the pendency of the appeal, the Veteran has been enrolled in college. However, his impairment in school and thinking are demonstrated through his short-term memory loss and marginal grades. The Veteran's poor performance in school may also be attributed to his reported lack of motivation, poor judgment, social isolation, poor hygiene, lack of concentration and focus, and inability to get along with others, as well as his anxiety, irritability, anger issues, and volatile and occasionally violent behavior. 

During the pendency of the appeal, the Veteran has reported strained relations with his wife, with frequent arguments, which have resulted in suicidal ideation and attempts on his part, and difficulties dealing with his two-year old son. He has also complained of difficulties relating to his in-laws, and has also reported voluntary social isolation at work and avoidance of crowds. The Veteran only has one friend who lives quite a distance away from him, and whom he only communicates with every one to three months, by telephone. He does not have any other social outlets or activities, nor does he engage in leisure pursuits or hobbies that he used to find enjoyable.

The Veteran's impaired judgment is demonstrated through his poor impulse control, which has resulted in anger outbursts, including road rage, constant unprovoked irritability, volatile behavior, including physical violence, and suicidal ideation and behavior. The Veteran also reported poor judgment in that he had a habit of buying random, unnecessary things. The Veteran was also found during examination at the Eastern Idaho Regional Behavioral Health Center in May 2011 to have mildly impaired insight, in that he substantially minimized the very traumatic episode with the police at the time of his attempted overdose. It was also determined at that time that due to his history of impulsivity and anger outbursts, he was at moderate risk for self-harm, and at moderate risk for aggresivity in an inpatient setting. He was diagnosed at that time with an impulse control disorder.

The Veteran has also been diagnosed throughout the appeal period with depression, related to his PTSD. He has also complained of symptoms of anxiety, and reported lack of motivation loss of interest in day-to-day activities, and suicidal ideation. He has also presented on examination with a restricted affect, and as recently as July 2011, complained of mood stability problems.

The Board also notes that during the entire appeal period, the Veteran has received GAF scores of 50 and below, with a score of 30-35 during private treatment in May 2011, which are indicative of the significant symptoms and serious impairment he has reported and displayed.

Although the Veteran has demonstrated some social and occupational functioning, in that he has maintained his marriage during the entire appeal period, albeit with marital counseling; he continues to help raise and care for his young son; and he has worked intermittently; the reported deficiencies in most of the areas needed for a 70 percent rating, the findings with regard to occupational functioning, suicidal ideation, the hearing testimony, and the GAF scores, place the evidence in relative equipoise. Resolving reasonable doubt in the Veteran's favor, the Board finds that the Veteran's symptoms approximate the criteria for a 70 percent rating throughout the appeal. 

As noted above, the evidence does not show that the Veteran had total occupational and social impairment. Accordingly, the evidence is against a rating in excess of 70 percent.

Extra-schedular consideration

Pursuant to § 3.321(b)(1), the Under Secretary for Benefits or the Director, Compensation and Pension Service, is authorized to approve an extraschedular evaluation if the case "presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b)(1) (2011).

The question of an extraschedular rating is a component of a claim for an increased rating. See Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). Although the Board may not assign an extraschedular rating in the first instance, it must specifically adjudicate whether to refer a case for extraschedular evaluation when the issue either is raised by the claimant or is reasonably raised by the evidence of record. Barringer v. Peake, 22 Vet. App. 242 (2008).

If the evidence raises the question of entitlement to an extraschedular rating, the threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service- connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization").

The Veteran's PTSD is manifested by impairment in social and occupational functioning. This impairment is contemplated by the schedular rating criteria, namely, social and occupational functioning. Hence, referral for consideration of an extraschedular rating is not warranted. 

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002 & Supp. 2011) defined VA's duty to assist a Veteran in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2011).

Under the VCAA, VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Pelegrini v. Principi (Pelegrini II), 18 Vet. App. 112, 120-21 (2004), see 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b).

The United States Court of Appeals for Veterans Claims (Court) has also held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

The Court had held that at a minimum, adequate VCAA notice in an increased rating claim required that VA notify the claimant that, to substantiate such a claim: (1) the claimant must provide, or ask VA to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on the claimant's employment and daily life; (2) if the diagnostic code under which the claimant is rated contains criteria necessary for entitlement to a higher disability rating that would not be satisfied by the claimant demonstrating a noticeable worsening or increase in severity of the disability and the effect of that worsening has on the claimant's employment and daily life (such as a specific measurement or test result), the Secretary must provide at least general notice of that requirement to the claimant; (3) the claimant must be notified that, should an increase in disability be found, a disability rating will be determined by applying relevant diagnostic codes; and (4) the notice must also provide examples of the types of medical and lay evidence that the claimant may submit (or ask VA to obtain) that are relevant to establishing entitlement to increased compensation. Vazquez- Flores v. Peake, 22 Vet. App. 37 (2008).

The Federal Circuit has overturned the requirement that VA provide notice that the claim could be substantiated by evidence of a disability's impact on daily life and that VA provide notice with regard to potential diagnostic code criteria (element 2). Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). 

In this case, notice fulfilling the requirements of 38 C.F.R. § 3.159(b) was furnished to the Veteran in a June 2009 letter. The Veteran was notified of all elements of the Dingess notice, and the surviving elements of Vazquez-Flores notice, including the disability- rating and effective-date elements of the claims, in the June 2009 letter. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

VCAA notice should be provided to a claimant before the initial unfavorable decision on a claim, as was done here. Pelegrini v. Principi, 18 Vet. App. 112 (2004); see also Disabled American Veterans v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003). 

The Duty to Assist

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4).

VA has obtained records of treatment reported by the Veteran, including service treatment records, VA and private treatment records. Additionally, the Veteran was provided a proper VA examination in July 2009, to evaluate his PTSD. 

In sum, the Board finds that VA has satisfied both the notice and duty to assist provisions of the law.



ORDER

Entitlement to an increased rating of 70 percent, but not greater, for PTSD is granted throughout the appeal.


REMAND

The Court has held that TDIU is an element of all appeals of an initial or increased rating. Rice v. Shinseki, 22 Vet. App. 447 (2009). TDIU is granted where a Veteran's service connected disabilities are rated less than total, but they prevent him from obtaining or maintaining all gainful employment for which his education and occupational experience would otherwise qualify him. 38 C.F.R. § 4.16 (2011). 
Where a Veteran: (1) submits evidence of a medical disability; (2) makes a claim for the highest rating possible; and (3) submits evidence of unemployability, the requirement in 38 C.F.R. § 3.155(a) (2011) that an informal claim "identify the benefit sought" has been satisfied and VA must consider whether the Veteran is entitled to a total rating for compensation purposes based on individual unemployability (TDIU). Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). 

In this case the Veteran has satisfied each of these requirements. During his July 2009 VA examination the Veteran reported difficulties maintaining employment due to his PTSD symptoms, and the VA examiner opined that his PTSD caused deficiencies in occupational functioning. Furthermore, the record reflects that since June 2009, the Veteran has reported difficulties obtaining and maintaining employment, frequent job changes, and periods of unemployment, due to symptoms from his service-connected PTSD.

The Court has held that in the case of a claim for TDIU, the duty to assist requires that VA obtain an examination which includes an opinion on what effect the appellant's service-connected disability has on his ability to work. Friscia v. Brown, 7 Vet. App. 294, 297 (1994). As noted above, the most recent examiner indicated that the Veteran's PTSD cuased occupational deficiencies, but he did not provide an opinion as to whether the Veteran's PTSD precluded gainful employment. There is no other competent opinion otherwise of record.

The Veteran is hereby notified that it is his responsibility to report for the examinations and to cooperate in the development of the case and that the consequences of failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. § 3.655 (2011).

Accordingly, the case is REMANDED for the following action:

1. The examiner who provided the July 2009 VA examination should review the claims folder and provide an opinion as to whether the Veteran's service-connected PTSD prevents the Veteran from obtaining or maintaining gainful employment for which he would otherwise be qualified with consideration of his education and occupational experience. The Veteran's claims file should be made available and the examination report should indicate that the claims file was reviewed by the examiner. 

If the July 2009 examiner is not available, the Veteran should be afforded a VA examination so that the needed opinion can be obtained.

The examiner should provide an opinion as to whether it is more likely than not (i.e., probability greater than 50 percent), at least as likely as not (i.e., probability of 50 percent), or less likely than not (i.e., probability less than 50 percent), that the Veteran's service-connected PTSD is sufficient to preclude him from obtaining or maintaining any form of substantially gainful employment consistent with his education and occupational background. The rationale for this opinion should be provided. 
The Veteran has reported a few years of college education, and his last two years of work experience included a job as a night security officer for approximately one year, a job as a sales associate for an electronics store for approximately two weeks, and his most recent job as an independent sales contractor for National Write Your Congressman.

2. Then, readjudicate the claim on appeal. If the benefit sought on appeal is not granted, the Veteran and his representative should be furnished a supplemental statement of the case before the case is returned to the Board, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).



______________________________________________
MILO H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs