Citation Nr: 1331574 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 07-38 917 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina



THE ISSUES

1. Entitlement to an initial evaluation in excess of 30 percent for posttraumatic stress disorder (PTSD) prior to November 1, 2011.

2. Entitlement to an initial evaluation in excess of 70 percent for PTSD on or after November 1, 2011.



REPRESENTATION

Appellant represented by: National Association for Black Veterans, Inc.



ATTORNEY FOR THE BOARD

Rebecca Feinberg, Counsel
INTRODUCTION

The Veteran served on active duty from July 1972 to July 1994. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2006 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. In that decision, the RO granted service connection for PTSD and assigned a 10 percent disability evaluation effective from November 18, 2005. 

During the pendency of the appeal, the RO increased the evaluation in an October 2007 statement of the case to 30 percent effective from November 18, 2005. The RO also issued a rating decision in February 2012 increasing the evaluation to 70 percent effective from November 1, 2011. However, applicable law mandates that when a veteran seeks an increased evaluation, it will generally be presumed that the maximum benefit allowed by law and regulation is sought, and it follows that such a claim remains in controversy where less than the maximum benefit available is awarded. See AB v. Brown, 6 Vet. App. 35 (1993). Thus, the issue remains on appeal. 

The Board remanded the case for further development in September 2011 and December 2012. As will be discussed in further detail below, the RO/Appeals Management Center (AMC) has complied with all of the Board's remand directives, and the Board may adjudicate the appeal at this time.

While it does not appear that the Veteran requested a hearing before the Board, he withdrew any such request in a February 2012 written statement.

A review of the Veteran's virtual VA claims files reveals that they contain relevant evidence not associated with the paper claims file. However, that evidence was reviewed by the RO/AMC prior to issuing the July 2013 supplemental statement of the case and by the Board prior to issuing this decision.

The issues of entitlement to service connection for a sleep disorder, to include as secondary to his service-connected PTSD, and entitlement to service connection for a back disorder have been raised by the record, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for appropriate action. 


FINDING OF FACT

Throughout the appeal period, PTSD has been productive of occupational and social impairment with deficiencies in most areas, but not total social and occupational impairment


CONCLUSIONS OF LAW

1. The criteria for an evaluation of 70 percent for PTSD prior to November 1, 2011, are met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b) (West 2002 & Supp. 2012); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.125, 4.126, 4.130, Diagnostic Code 9434-9411 (2012).

2. The criteria for an evaluation in excess of 70 percent for PTSD have not been met at any point during the appeal period. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b) (West 2002 & Supp. 2012); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.125, 4.126, 4.130, Diagnostic Code 9434-9411 (2012).


REASONS AND BASES FOR FINDING AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Clams Assistance Act of 2000 as amended (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2012).

Upon receipt of a substantially complete application for benefits, VA must notify the claimant what information or evidence is needed in order to substantiate the claim and it must assist the claimant by making reasonable efforts to get the evidence needed. 38 U.S.C.A. §§ 5103(a), 5103A (West 2002); 38 C.F.R. § 3.159(b); see Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). The notice required must be provided to the claimant before the initial unfavorable decision on a claim for VA benefits, and it must (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004). 

In Dingess v. Nicholson, 19 Vet. App. 473 (2006), the United States Court of Appeals for Veterans Claims (Court) held that, upon receipt of an application for a service-connection claim, 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b) require VA to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating, or is necessary to substantiate, each of the five elements of the claim, including notice of what is required to establish service connection and that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. 

With regard to claims for increased disability ratings for service-connected conditions, the law requires VA to notify the claimant that, to substantiate a claim, the claimant must provide, or ask VA to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the disability. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Vazquez- Flores v. Peake, 22 Vet. App. 37 (2008), vacated and remanded sub nom. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The claimant must be notified that, should an increase in disability be found, a disability rating will be determined by applying relevant Diagnostic Codes, which typically provide for a range in severity of a particular disability from noncompensable to as much as 100 percent (depending on the disability involved), based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration. Finally, the notice must provide examples of the types of medical and lay evidence that the Veteran may submit (or ask the VA to obtain) that are relevant to establishing her or his entitlement to increased compensation. However, the notice required by section 5103(a) need not be specific to the particular Veteran's circumstances; that is, VA need not notify a Veteran of alternative diagnostic codes that may be considered or notify of any need for evidence demonstrating the effect that the worsening of the disability has on the particular Veteran's daily life. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The notice must be provided prior to an initial unfavorable decision by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

Nevertheless, the Veteran in this case is challenging the initial evaluation assigned following the grant of service connection for PTSD. In Dingess, the Court held that in cases where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service-connection claim has been more than substantiated, it has been proven, thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. Id. at 490-91. See also VAOPGCPREC 8-2003 (December 22, 2003). Thus, VA's duty to notify has been satisfied with respect to the issues of entitlement to a higher initial evaluation for his PTSD.

In addition, the duty to assist the Veteran has also been satisfied in this case. The Veteran's service treatment records and all identified and available post-service medical records pertinent to the years after service are in the claims file and were reviewed by both the RO and the Board in connection with the claim. The Veteran has not identified any outstanding records that are relevant to the issue being decided herein. 

In addition, the Veteran was afforded VA examinations in July 2006, October 2008, and November 2011 in connection with his claim. The Board finds that the VA examinations in this case are adequate, as they are predicated on a review of the Veteran's medical history as well as on an examination and fully addresses the rating criteria that are relevant to rating the disability in this case.

Moreover, there is no objective evidence indicating that there has been a material change in the severity of the Veteran's service-connected disability since he was last examined. 38 C.F.R. § 3.327(a). The duty to assist does not require that a claim be remanded solely because of the passage of time since an otherwise adequate VA examination was conducted. VAOPGCPREC 11-95. 

Thus, there is adequate medical evidence of record to make a determination as to the Veteran's PTSD. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the issue on appeal has been met. 38 C.F.R. § 3.159(c)(4).

Furthermore, as directed in the September 2011 Board remand, a letter was sent to the Veteran in September 2011 that requested that he inform VA of any outstanding medical evidence and provide releases for any private evidence, to particularly include records from Dr. H.J. (initials used to protect privacy). However, the Veteran did not respond. In addition, he was provided with the requested VA examination in November 2011.

Likewise, as directed in the December 2012 Board remand, a letter was sent to the Veteran in March 2013 to solicit information regarding any outstanding evidence, including records specifically from Dr. H.J. The Veteran responded with a release for the Vet Center only. The Vet Center records and all updated VA outpatient treatment records were obtained and associated with the claims file. Thereafter, as directed, the claims were readjudicated. Therefore, the RO/AMC has substantially complied with the directives contained in the Board's remand. Stegall v. West, 11 Vet. App. 268, 271 (1998).

For the reasons set forth above, the Board finds that VA has complied with the VCAA's notification and assistance requirements. The claims for higher evaluations for PTSD are thus ready to be considered on the merits.


Law and Analysis

Disability evaluations are determined by application of the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. An evaluation of the level of disability present must also include consideration of the functional impairment of the Veteran's ability to engage in ordinary activities, including employment. 38 C.F.R. § 4.10. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

The Veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). 

"Staged" ratings are appropriate for any rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App 119 (1999). As will be discussed in more detail below, the Board finds that the disability has remained essentially consistent in severity throughout the appeal period, and a uniform rating is warranted.

The Veteran is in receipt of 30 and 70 percent ratings for PTSD pursuant to 38 C.F.R. § 4.130, Diagnostic Code 9411. This Diagnostic Code addresses PTSD. However, all psychiatric disabilities are evaluated under a general rating formula for mental disorders. Under the general rating formula, a 30 percent rating requires a showing of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, and recent events).

A 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g. retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing effective work and social relationships.

A 70 percent rating is warranted when the psychiatric disorder results in occupational and social impairment with deficiencies in most areas such as work, school, family relations, judgment, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such an unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); and inability to establish and maintain effective relationships.

A total schedular rating of 100 percent is warranted when the disorder results in total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of mental and personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name.

The list of symptoms under the rating criteria are meant to be examples of symptoms that would warrant the rating, but are not meant to be exhaustive, and the Board need not find all or even some of the symptoms to award a specific rating. Mauerhan v. Principi, 16 Vet. App. 436, 442-43 (2002). If the evidence shows that the Veteran suffers symptoms or effects that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the criteria for a particular rating, the appropriate equivalent rating will be assigned. Id. at 443.

Furthermore, the rating code requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment at a level consistent with the assigned rating. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed.Cir. 2013).

When the symptoms attributable to a service-connected disability cannot be separated from those attributable to a non-service-connected disability, all symptomatology should be considered in determining the appropriate rating, and that has been done here. Mittleider v. West, 11 Vet. App. 181, 182 (1998) (when it is not possible to separate the effects of the service-connected and non-service-connected disabilities, the benefit of the doubt doctrine described in 38 C.F.R. § 3.102 dictates that such signs and symptoms be attributed to the service-connected disability or disabilities).

The GAF (Global Assessment of Functioning) scale reflects psychological, social, and occupational functioning of a hypothetical continuum of mental health illness. See Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV). A GAF score of 41-50 denotes serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF score of 51-60 denotes moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). See Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Washington, DC, American Psychiatric Association, 1994.

At the outset, the Board finds that the November 2011 VA examination is highly probative in this case, as it is the most thorough report of record. That examination report identifies the pertinent symptomatology and describes the manifestations reported by the Veteran in detail. Furthermore, the Veteran's symptomatology, complaints, and assigned GAF scores (53 in July 2006, 45 in October 2008, and 55 in November 2011) were essentially the same on all examinations. In fact, the GAF score given during the November 2011 VA examination, which was the basis for the 70 percent disability rating, is the highest of the GAF scores assigned during any of VA examinations in this case.

Furthermore, the symptomatology reported in November 2011 is essentially the same as that reported on previous VA examinations and in VA outpatient and private treatment records. Panic attacks were previously reported in written statements, treatment records, and during the October 2008 VA examination, when a panic disorder was diagnosed. Depression, anxiety, sleep impairment, and flattened affect were also reported prior to November 2011, and suicidal ideation was present in October 2008 as well as November 2011. As such, there is at least a reasonable as to whether the Veteran's PTSD more nearly approximated a 70 percent rating prior to November 1, 2011. Thus, the Board concludes that a 70 percent disability evaluation is warranted throughout the appeal period, and to this extent, the Veteran's claim is granted.

However, the Board concludes that none of the lay or medical evidence of record suggests that a 100 percent schedular rating is warranted at any time during the appeal period. The Veteran has never demonstrated total occupational and social impairment. He has maintained a relationship with his wife for over thirty years, even though he described it as difficult during the November 2011 VA examination. He also maintains a relationship with his teenage daughter, although he described it as "fair" in November 2011. The Veteran has further reported that, while he had no friends, he felt some support from the members of his PTSD group. In addition, the November 2011 VA examiner opined that the Veteran did not demonstrate an inability to establish and maintain effective relationships. This level of impairment of family relationships is contemplated by the 70 percent rating assigned, and such evidence does not suggest total social impairment

The Veteran has also reported working part-time making pizza for Dominos, and prior to that time, he worked at Lowes. He quit his last job due to a combination of back pain and not getting along with coworkers. Thus, the Veteran does not appear to have total occupational impairment.

Furthermore, there is no evidence of gross impairment in thought processes or communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting self or others, disorientation to time or place, or memory loss for names of close relatives, own occupation, or own name. The November 2011 VA examiner indicated that he did not have these symptoms, while attributing many other symptoms to his PTSD. The only specific symptom contained in the criteria for assigning a 100 percent rating is an intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene. However, the November 2011 VA examiner also noted that, while the Veteran showered once a week at times, he generally puts on clean clothes.

The other VA examination reports and VA and private treatment records, along with the Veteran's lay statements, further show that the Veteran never manifested this symptomatology during the appeal period. In short, the Veteran has only demonstrated one of the symptoms associated with a 100 percent rating and has never been shown to manifest total occupational and social impairment. The lowest GAF score assigned is 45 in October 2008, which is compatible with the 70 percent rating currently assigned to the Veteran's PTSD. All other GAF scores are in excess of that number and denote functioning that is better than the criteria associated with a 100 percent evaluation.

In reaching this decision, the potential application of various provisions of Title 38 Code of Federal Regulations have been considered, whether or not they were raised by the Veteran. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). In particular, the Board has considered the provisions of 38 C.F.R. § 3.321(b)(1). However, in this case, the Board finds that the record does not show that the Veteran's PTSD is so exceptional or unusual as to warrant the assignment of a higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1).

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008). In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service- connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and no extraschedular referral is required. Id.; see also VAOGCPREC 6-96 (Aug. 16, 1996). Otherwise, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provided by the extraschedular regulation (38 C.F.R. § 3.321(b)(1) ) as "governing norms" (which include marked interference with employment and frequent periods of hospitalization).

The evidence in this case does not show such an exceptional disability picture that the available schedular evaluation for the service-connected disability is inadequate. A comparison between the level of severity and symptomatology of the Veteran's assigned rating with the established criteria found in the rating schedule shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology. Indeed, the 70 percent evaluation contemplates the overall effect of all of his symptomatology on his occupational and social functioning. As discussed above, there are higher ratings available under the diagnostic code, but the Veteran's disability is not productive of such manifestations.

Based on the foregoing, the Board finds that the requirements for an extraschedular evaluation for the Veteran's service-connected PTSD under the provisions of 38 C.F.R. § 3.321(b)(1) have not been met. Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995); Thun v. Peake, 22 Vet. App. 111 (2008).

The Board concludes that the evidence supports a disability rating of 70 percent for PTSD throughout the appeal period. However, the preponderance of the evidence is against assignment of a rating higher than 70 percent for PTSD, and, to that extent, the claim must be denied. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

An initial evaluation of 70 percent for PTSD prior to November 1, 2011, is granted, subject to the laws and regulations governing the payment of VA benefits.

An initial evaluation in excess of 70 percent for PTSD for the entire appeal period is denied.



____________________________________________
JESSICA J. WILLS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs